64 S.E.2d 431 (1951)
233 N.C. 415
ERVIN
v.
CANNON MILLS CO. et al.
No. 383.
Supreme Court of North Carolina.
April 11, 1951.
*433 Guy T. Carswell, and Shannonhouse, Bell & Horn, Charlotte, Burke & Burke, Taylorsville, for plaintiff, appellee.
Hartsell & Hartsell, Concord, Scott & Collier, Statesville, for defendants, appellants.
DEVIN, Justice.
The only assignment of error brought forward in defendants' appeal is the denial of their motion for judgment of nonsuit.
The determination of this question requires consideration of the evidence offered in accord with the rule that it be viewed in the light most favorable for the plaintiff, and that he be given the benefit of every reasonable inference to be drawn therefrom. Nash v. Royster, 189 N.C. 408, 127 S.E. 356; Graham v. North Carolina Butane Gas Co., 231 N.C. 680, 58 S.E. 2d 757. On this motion not only will the evidence offered by plaintiff be considered, but also that offered by defendants which is favorable to the plaintiff, or which may be used to clarify and explain plaintiff's evidence. Harrison v. North Carolina R. R. Co., 194 N.C. 656, 140 S.E. 598; Gregory v. Travelers Ins. Co., 223 N.C. 124, 25 S.E.2d 398, 147 A.L.R. 283. All the facts in evidence which tend to support plaintiff's cause of action are assumed to be true. Bundy v. Powell, 229 N.C. 707, 51 S.E.2d 307.
The evidence offered tended to show that on the morning of October 4, 1946, about 10 a. m. the truck of defendant Mills Company was being driven by its employee, defendant Allen, in the regular course of his employment, westward along McGill Street in the City of Concord. The street was paved, 30 feet wide, straight and practically level, with slight down grade westward. The street crossed the main line of Southern Railway and a spur track, and then Bruton Street, and 40 or 50 feet further, on the south side of McGill Street, and to the truck driver's left, was the entrance into the plant of the defendant Mills Company, into which defendant Allen intended to drive the truck. The day was clear and the pavement dry. Proceeding along the street in the same direction behind the truck was the plaintiff's intestate riding a motorcycle. The truck was being driven at 20 or 25 miles per hour and was slowed down to make a left turn across the street. The defendant Allen on his examination said he gave the left turn signal, extending his hand and arm out of the truck cab window, and then "angled" across the street toward the entrance to the driveway, so that the distance across instead of being 15 feet was 25 or 30 feet, and that after giving the signal for left turn as soon as he began to turn he withdrew his hand in order to hold the wheel of the truck with both hands to make the turn. He said, "When I got ready to turn I took my hand in * * * I did not keep my hand out until the impact. I had brought it back in. You can't make the turn with one hand." In making the left turn the truck did not pass to the right of the point at which the center line of the mill driveway extended would intersect the center line of McGill Street. The truck had proceeded across the street to a point two to five feet from the south curb line of McGill Street, just east of the entrance to the driveway, when it was struck by the motorcycle of plaintiff's intestate. The left front bumper of the truck was knocked loose, the motorcycle damaged, and plaintiff's intestate so severely injured that as result he died five days *434 later. There were marks on the pavement indicating the motorcycle had traveled from about the center of the street diagonally 30 feet to the point of impact, which was indicated by the appearance of dirt on the pavement. The officer who investigated the collision testified the defendant Allen stated at the time that he did not use his rear view mirror. And defendant Allen testified the truck was equipped with outside rear vision mirror, that he did not look out the back window of cab and did not see the motorcycle until the instant of impact; that he had looked back further east and seen nothing. "But I didn't look back at the time I turned." Looking east, vision is unobscured 700 or 800 feet. It is 376 feet from the railroad track to the entrance to the Mill. Shortly before the collision the motorcycle was observed at the railroad crossing where it had momentarily stopped, and a witness testified that it then moved on going west with nothing unusual as to manner or speed.
The statute prescribes that the driver of a motor vehicle upon a highway "before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, * * * and whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle * * *. Left turnhand and arm horizontal, forefinger pointing. All signals to be given from left side of vehicle during last fifty feet traveled." G.S. § 20-154.
It is also provided by statute that at an intersection the driver of a vehicle "intending to turn to the left shall approach such intersection in the lane for the traffic to the right of and nearest to the center of the highway, and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right there-of before turning such vehicle to the left." G.S. § 20-153. Banks v. Shepard, 230 N.C. 86, 52 S.E.2d 215; Ward v. Bowles, 228 N.C. 273, 45 S.E.2d 354. Violation of a public statute regulating the operation of motor vehicles on the highway is a breach of legal duty and constitutes negligence, but it does not afford ground for action unless it be the proximate cause of resultant injury. Holland v. Strader, 216 N.C. 436, 5 S.E.2d 311.
From the evidence offered, the inference seems permissible that the driver of defendants' truck in making a left turn across the street on this occasion failed to give the left turn signal with his hand "during last 50 feet traveled," as according to his statement he extended his hand when he was 40 or 50 feet away from the driveway into the mill but withdrew his hand when he began to turn, or as he expressed it when he "got ready to turn," and that due to his "angling" course across the street he began his turn 25 or 30 feet from the entrance. During that time he gave no signal. Though he estimated he kept his hand out about a "minute and a half," the short distance traveled at the rate given would indicate not more than a second or two of time could have been consumed. "A statutory warning must be substantially complied with, in order to avoid the imputation of negligence." Huddy 3-4 sec. 53. It is the purview of the statute that the prescribed hand signal should be maintained for a sufficient length of time to enable the driver of the following vehicle to observe it and to understand therefrom what movement is intended. According to defendant Allen's testimony he did not pass to the right of the point where the line of the mill driveway extended would have intersected the center line of the street. There is thus some evidence the defendants did not comply in all respects with the provisions of the statute.
But on the motion for judgment of nonsuit the plaintiff is entitled to a favorable consideration of the evidence in another aspect. We do not regard the requirement in G.S. § 20-154, that a prescribed hand signal be given of intention to make a left turn in traffic, as constituting in all cases full compliance with the mandate also expressed in this statute that before turning from a direct line the driver shall first see that such movement can be made in safety, nor do we think the performance of this mechanical act alone relieves *435 the driver of the common law duty to exercise due care in other respects.
Under the allegations and testimony here the obligation rested upon the defendants in the operation of their motor truck upon the streets of the City of Concord to exercise due care not to injure others rightfully using the street by conduct or omission the injurious consequences of which under the circumstances they could reasonably have foreseen and avoided. Failure to perform a duty whether required by statute or imposed by the circumstances in which the parties are placed becomes actionable when it is shown to be the proximate cause of injury.
Here the evidence shows the intestate's motorcycle was proceeding in the same direction as the truck, following behind. The defendants' truck was equipped with an outside rear view mirror. A glance at this would have revealed the presence of the following vehicle and admonished the driver to exercise care to see that adequate warning of his intention to turn was given, and that the movement of slowing down to 10 or 15 miles per hour and then turning diagonally across the street to the left in front of the following vehicle could be made in safety. The duty devolves upon one driving a motor vehicle on the highway, intending to make a left turn, to exercise care to avoid injury to a following vehicle by keeping proper lookout, by giving proper signals of his intention, and by keeping his motor vehicle under control. 6 A.L.R.2d 1246 note. Performing the requirement of giving appropriate hand signals does not necessarily relieve the driver of a motor vehicle of the duty also to make proper observation of the movement of vehicles approaching from the rear, and the giving of a hand signal quickly withdrawn without observing traffic to the rear may not be considered as measuring up to the full duty imposed upon the driver under the circumstances. Bauer v. Davis, 43 Cal. App.2d 764, 111 P.2d 715. "The giving of the statutory signals is the least the law requires of a driver of a motor vehicle. After giving the statutory signals, he cannot close his eyes. If he sees a person in danger from his car, he must do what is reasonably necessary to avoid injuring him." Kullman & Co. v. Samuels, 148 Miss. 871, 114 So. 807, 809. "He (the driver) is held to the duty of seeing what he ought to have seen." Wall v. Bain, 222 N.C. 375, 379, 23 S.E.2d 330, 333. "The circumstances and conditions may be such that the reasonable and ordinary care of the prudent person is not satisfied or fulfilled by mere compliance with the regulation, but requires the exercise of more or other care. Whatever precautions ordinary and reasonable care and prudence require for the proper protection of others must be taken even though not exacted by statutory provisions." Richards v. Begenstos, 237 Iowa 398, 21 N.W.2d 23, 28.
Considering a similar statute, the Court of Civil Appeals of Texas, in O. K. Theater Corp. v. Rehmeyer, 115 S.W.2d 985, 987, used this language: "This duty is separate from the duty prescribed by the words immediately following, which is to give a `plainly visible or audible' signal to the driver of any car the movement of which might be affected by such change of course. Obviously the signal would be futile if the movement could not be made in safety; and, therefore, there is a complete failure of duty upon the part of the driver of the turning car, if he does not first use reasonable care to see that the turn may be made in safety." In Blashfield, sec. 703, we find the principle stated concisely: "The giving of the statutory signals will not necessarily relieve a motorist from the duty of giving other signals. In other words, such statutes call for the minimum of care and not the maximum." From Huddy Automobile Law 3-4, sec. 52, we quote: "The driver of an automobile may be required to give, not only the statutory signals, but also other signals, or to slacken speed or take other steps to avoid a collision, if the surrounding circumstances and conditions require it. The giving of the statutory signals is the least the law requires."
This view was expressed by Justice Ervin, speaking for the Court in Grimm v. Watson, 233 N.C. 65, 62 S.E.2d 538, 540: *436 "Under the statute codified as G.S. § 20-154, any person who undertakes to drive a motor vehicle upon a highway must exercise reasonable care to ascertain that such movement can be made in safety before he turns either to the right or the left from a direct line. Besides he is required by the same statute to signal his intention to turn in the prescribed manner and for the specified distance before changing his course `whenever the operation of any other vehicle may be affected by such movement.' A motorist violates G.S. § 20-154 and in consequence is negligent as a matter of law if he fails to observe either of these statutory precautions in changing the course of his vehicle upon the highway, and his negligence in such respect is actionable if it proximately causes injury to another." See also Cooley v. Baker, 231 N.C. 533, 58 S.E. 2d 115.
The defendants in their brief base their argument for reversal of the ruling below solely on the ground that there was no evidence of negligence on the part of the defendants. The question of the contributory negligence of plaintiff's intestate is not there presented. However, we have considered the evidence in the record also as it relates to this phase of the case. There was no evidence as to the speed of the motorcycle ridden by plaintiff's intestate. One witness saw him as he stopped at the railroad crossing and then proceeded on his way in the direction of the place of collision 376 feet away, and saw nothing unusual in the manner or speed with which the motorcycle was being operated. Defendant Allen said no signal was given by the rider of the motorcycle, but as this was in a business district of the City of Concord the requirement that the driver of the following vehicle shall sound his horn before attempting to pass, G.S. § 20-149, does not apply. Nor does it appear that the rider of the motorcycle in the first instance was attempting to pass until the truck had slowed down and began turning to the left, as the marks on the pavement would seem to indicate that at that point he turned to his left, apparently to avoid the truck, applied his brakes and traversed a distance of 30 feet before colliding with the truck, which was also turning to the left.
In any event, the question of proximate cause was one for the jury. What is the proximate cause of an injury is ordinarily a question to be determined by the jury as a fact in view of the attendant circumstances. In the language of Justice Barnhill in Conley v. Pearce-Young-Angel Co., 224 N.C. 211, 29 S.E.2d 740, 742, "It is only when the facts are all admitted and only one inference may be drawn from them that the court will declare whether an act was the proximate cause of an injury or not. But that is rarely the case." Nichols v. Goldston, 228 N.C. 514, 46 S.E.2d 320; Morris v. Seashore Transportation Co., 208 N.C. 807, 182 S.E. 487. We think the evidence is lacking in probative value to show such contributing negligence on the part of plaintiff's intestate as would require nonsuit as a matter of law on that ground.
The decision in Stovall v. Ragland, 211 N.C. 536, 190 S.E. 899, cited by defendants, is not controlling on the facts of this case. There the plaintiff, driver, looked both ways, front and rear, and seeing no vehicle approaching, the road being straight for 500 feet, turned to his left without hand signal, and was entering his driveway when struck by defendant's automobile traveling rapidly. It was held that plaintiff having looked carefully and observed no vehicle approaching was not required under the circumstances to give the signal prescribed by the statute, and nonsuit was reversed.
A careful analysis of the evidence in the record in the case at bar leads to the conclusion that considering it in the light most favorable for the plaintiff and giving him the benefit of every reasonable inference therefrom it was sufficient to warrant submission to the jury, and that the motion for judgment of nonsuit was properly denied.
As the judge's charge was not sent up, it is presumed that the pertinent principles of law applicable to the facts of this case were fully and correctly stated to the jury.
In the trial we find
No error.