HETTIE H. TART v. ATLAS M. REGISTER, THELMA BRYANT JERNI-
GAN, AND CAROLYN FAYE JERNIGAN, MINOR, AND L. M. CHAFFIN,
GUARDIAN AD LITEM.

AND

VIVIE J. FLOWERS v. ATLAS M. REGISTER, THELMA BRYANT JERNI-
GAN, AND CAROLYN FAYE JERNIGAN, MINOR, AND L. M. CHAFFIN,
GUARDIAN AD LITEM.

(Filed 23 May 1962.)

**1. Appeal and Error § 38—**
   Exceptions and assignments of error not brought forward in the brief
   are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**2. Pleadings § 2—**
   The complaint should contain a concise statement of the ultimate facts
   to which the pertinent legal or equitable principles are to be applied, and
   should not allege mere evidentiary facts required to prove the existence
   of the ultimate facts.

**3. Automobiles § 8—**
   Before making a left turn it is required that a motorist give the statu-
   tory signal and that he first ascertain that the movement can be made in
   safety, G.S. 20-154(a), and the failure to observe either of the statutory

requirements constitutes negligence as a matter of law, which is action-
able if the proximate cause of injury.

4. **Same; Automobiles §§ 35, 41h— Allegations and evidence held suf-
ficient on question of negligence in making turn without first ascer-
taining that movement could be made in safety.**

Plaintiffs' allegations and the evidence favorable to them were to the
effect that one defendant before attempting to make a left turn gave the
statutory signal the proper distance before attempting the turn, and that
as she began the turn she was struck by the car driven by the other de-
fendant, who was attempting to pass her at the intersection, and that
the first defendant proceeded to make the left turn when she saw or, in
the exercise of reasonable care, should have seen that the other defend-
ant was driving at a dangerous rate of speed and was going to overtake
and pass her, and the evidence further tended to show that the first de-
fendant was advertent to the car approaching from her rear and that
she ceased looking in her rear view mirror when about a hundred feet
from the intersection and proceeded to make the turn in disregard of the
oncoming vehicle and in reliance on having given the turn signal. *Held:*
Defendant's demurrers and motions to nonsuit on the ground that the
allegations and evidence disclosed that the collision was due solely to
the negligence of the driver of the car attempting to pass at the inter-
section, were properly overruled.

5. **Negligence § 8—**

If the acts of two parties operating independently of each other join
and concur in producing the injury complained of, each is liable therefor
jointly and severally as joint *tort-feasors.*

6. **Same—**

One defendant may not rely upon the acts of another to insulate his
negligence when such acts transpire prior to or simultaneously with his
own acts, since the principle of insulating negligence refers to conduct
subsequently occurring.

7. **Appeal and Error § 51—**

Only the motion to nonsuit made at the close of all of the evidence
is presented for review, and in passing upon the question all of the evi-
dence favorable to plaintiffs, whether offered by plaintiffs or defendants,
is to be considered.

8. **Automobiles § 40; Evidence § 39—**

Declarations of passengers in a car, immediately before the driver
thereof attempted to make a left turn, that a car was approaching from
the rear at a fast pace and that the driver "better not turn" or the other
car would "hit us" are competent as spontaneous declarations admissible
as *pars res gestae,* and testimony of such declarations is also competent
to rebut the driver's allegations that the passengers were guilty of con-
tributory negligence in failing to warn the driver of the approaching
danger.

9. **Trial § 17—**

One defendant may not object that the other defendant was permitted

to introduce evidence relevant and competent in support of his allegations when the court properly restricts such evidence to the question of that defendant's liability.

**10. Infants § 6—**

While the courts are alert to protect the rights of minors, whether represented by guardians or not, and will scan with extra care all records affecting the interests of minors, the appointment of a guardian *ad litem* for a minor is not jurisdictional, and whether a judgment against an infant will be vacated because the infant was not represented by a guardian *ad litem* must be determined on the facts of each particular case on the basis of whether the infant was duly protected in his rights and property.

**11. Same—**

The fact that a guardian *ad litem* for a minor defendant was not appointed until after verdict does not require that the verdict be set aside and a new trial ordered when the trial court finds upon competent evidence that the interests of the minor had been fully and amply protected by the attorney for defendants to the same extent as if a guardian *ad litem* had been appointed at the outset.

**12. Appeal and Error § 40—**

A new trial will not be granted for mere technical error which could not have affected the result.

**13. Automobiles § 55—**

The test of whether a parent is liable for the operation of an automobile by a minor child under the family purpose doctrine depends upon the parent's control or right to control the use of the automobile and not upon ownership.

**14. Same—**

Evidence that the car in question was a gift to the child but was registered in the mother's name, that the child paid for the operation and upkeep of the car and used it in going to work and for other purposes, and had the right to use the car without her mother's permission, but that the child lived in the home of her parents and usually told her mother where she was going if her mother was present, etc., *is held* sufficient to be submitted to the jury on the parent's liability under the family purpose doctrine.

**15. Damages § 9—**

Hospital and doctor's bills of an injured passenger, paid under the automobile medical payments insurance clause of a policy for which defendant paid the premium, should be deducted in ascertaining the damages recoverable by the passenger, and when the jury has been permitted to include such medical expenses in ascertaining the amount of damages, the judgment will be modified so as to allow a credit for the amount paid under the policy, notwithstanding that such payment was not predicated upon the negligence of insured.

APPEAL by defendants Thelma Bryant Jernigan and Carolyn Faye Jernigan from *Carr, J.,* October 1961 Civil Term of HARNETT.

This appeal involves two civil actions which were consolidated for the purpose of trial. Plaintiffs seek to recover damages for personal injuries suffered by them in a collision of automobiles allegedly caused by the actionable negligence of defendants.

The collision occurred about 12:30 A.M. on 20 December 1960 at the intersection of U. S. Highway 301 and a rural dirt road about two miles north of the city of Dunn. The dirt road runs east and west; Highway 301 runs north and south. Highway 301 is straight and level for a considerable distance in both directions from the intersection, is 20 feet wide and has 6-foot shoulders on each side. The speed limit is 55 miles per hour. The weather was clear and the highway dry. Plaintiffs were guest passengers in a Chevrolet automobile being driven southwardly by defendant Carolyn Faye Jernigan. The Chevrolet was approaching the intersection at a speed of 25 to 30 miles per hour. About 200 feet or more north of the intersection Carolyn turned on the mechanical turn signal, preparatory to making a left turn into the dirt road at the intersection. Defendant Atlas M. Register was also driving south, in a Ford automobile, and was following and overtaking the Chevrolet. He was travelling at a high rate of speed, at least 60 miles per hour. Notwithstanding an intersection sign about 150 yards north of the junction, and double yellow lines in the highway beginning about even with the intersection sign, Register pulled to his left and attempted to pass. He collided at or near the intersection, in the east lane, with the Jernigan car which was turning left. The Jernigan car came to rest against an embankment southeast of the intersection. There was a skid mark 121 feet long, starting 4 feet and 6 inches east of the yellow line and leading up to the Register car. Plaintiffs were injured and taken to the hospital. The Chevrolet in which plaintiffs were riding was registered in the name of Thelma Bryant Jernigan, mother of Carolyn Faye Jernigan (age 19).

Plaintiffs instituted separate actions. In each, Register and the Jernigans, mother and daughter, were sued jointly.

The jury answered issues submitted, and found that plaintiffs were injured by the negligence of Atlas M. Register and Carolyn Faye Jernigan, and that Carolyn Faye Jernigan was operating the Chevrolet as agent of Thelma Bryant Jernigan "under the family purpose doctrine." It awarded damages to each plaintiff in the amount of $10,000. Judgments were entered in accordance with the verdicts.

Defendant Register does not appeal. Defendants Jernigan appeal and assign errors.

*Dupree, Weaver, Horton & Cockman for defendants Jernigan, appellants.*

*Wilson & Bain and Wiley F. Bowen for plaintiffs, appellees.*

MOORE, J.   Appellants make nineteen assignments of error based on fifty-seven exceptions. Many of the exceptions and assignments are not brought forward in their brief, and these are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 810. Of those brought forward in the brief, several merit discussion.

(1) Appellants demurred to the complaints on the ground that they do not state sufficient facts to constitute causes of action as to defendants Jernigan in that "it appears upon the face of the complaint(s) that the sole proximate cause of the motor vehicle collision . . . was the negligence of defendant Atlas M. Register." The demurrers were overruled. Appellants in apt time moved for nonsuits. The motions were overruled. The demurrers and motions for nonsuit will be considered together since some of the principles of law decisive of the demurrers apply also to the motions for nonsuit.

Appellants contend that the purported allegations of actionable negligence as to them are mere conclusions of the pleader and are inconsistent with and repugnant to the factual allegations which show that Register's negligence was the sole proximate cause of the collision. They assert, in summary, that the complaints allege that Carolyn Faye Jernigan gave a lawful turn signal and was making a lawful turn when Register, travelling at a high and dangerous rate of speed, crossed a double yellow line, attempted to pass at an intersection where passing was unlawful, and ran into the Jernigan car. They further assert that there is no allegation that Register sounded his horn, blinked his lights, or did anything which would give notice — at a time when effective action might be taken by driver Jernigan — that he would unlawfully attempt to pass. Appellants contend, therefore, that the pleaded conclusions that Carolyn Faye Jernigan failed to control her vehicle, failed to keep a reasonable lookout, and had timely notice of Register's movements are unsupported by factual allegations, do not sufficiently allege negligence on the part of defendants Jernigan, and the demurrers should have been sustained.

We do not agree with appellants' estimate of the sufficiency of the complaints. The pertinent allegations of the complaints, in summary, except where quoted, are: Notwithstanding the fact that Carolyn Faye Jernigan "had her blinker light on, indicating she was going to make a left turn, she proceeded to make the left turn when she saw or, by the exercise of reasonable care, should have seen that the said Atlas M. Register was operating his . . . automobile at a high and

dangerous rate of speed and was going to overtake and pass her, and she knew or, by the exercise of reasonable care, should have known that said turn or movement could not be made in safety, and that she had ample time and notice to avoid said collision by the exercise of due care." She was operating the car without keeping a proper lookout. Plaintiffs' injuries were caused by the joint and several acts of defendants, which combined and concurred in proximately producing such injuries.

It is only required that a complaint contain a concise statement of the ultimate facts constituting the cause of action. *Thomas & Howard Co. v. Insurance Co.*, 241 N.C. 109, 84 S.E. 2d 337. It should not allege the evidentiary facts required to prove the existence of the ultimate facts. *Daniel v. Gardner*, 240 N.C. 249, 81 S.E. 2d 660. Only facts to which the pertinent legal or equitable principles of law are to be applied should be stated. *Truelove v. R. R.*, 222 N.C. 704, 24 S.E. 2d 537.

The complaint does not, as suggested by appellants, allege both a lawful and an unlawful turn on the part of driver Jernigan. G.S. 20-154(a) provides in part that "The driver of any vehicle upon a highway before . . . turning from a direct line shall first see that such movement can be made in safety, and . . . shall give a signal as required in this section. . . ." The statute imposes two duties upon a motorist intending to turn, (1) to see that the movement can be made in safety, and (2) to give the required signal when the operation of any other vehicle may be affected. A motorist is negligent as a matter of law if he fails to observe *either* of these statutory precautions, and his negligence in such respect is actionable if it proximately causes injury to another. *Mitchell v. White*, 256 N.C. 437, 124 S.E. 2d 137; *Grimm v. Watson*, 233 N.C. 65, 62 S.E. 2d 538. "Performing the requirement of giving appropriate . . . signals does not necessarily relieve the driver of a motor vehicle of the duty also to make proper observation of the movement of vehicles approaching from the rear. . . ." *Ervin v. Mills Co.*, 233 N.C. 415, 420, 64 S.E. 2d 431. "The giving of a turn signal indicates the intention of the signaler to make the indicated turn and requires other motorists involved to observe caution and use reasonable care, but it does not vest in the signaler an absolute right to make the turn immediately, regardless of circumstances. The signaler must first ascertain that the movement can be made in safety." *Eason v. Grimsley*, 255 N.C. 494, 121 S.E. 2d 885. An allegation that the proper turn signal was given does not support the conclusion that the signaler thereby acquired the right to make an uninterrupted turn, or that the turn made pursuant thereto was lawful. The complaints in the instant case sufficiently allege the ultimate fact that Carolyn

Faye Jernigan turned without having first ascertained that the movement could be made in safety. It was not required that the complaints allege in detail all of the evidentiary facts which would have put her on notice that turning was perilous if. she had heeded them.

"There may be two or more proximate causes of an injury. These may originate from separate and distinct sources or agencies operating independently of each other, yet if they join and concur in producing the result complained of, the author of each cause would be liable for the damages inflicted, and action may be brought against any one or all as joint tort-feasors." *Barber v. Wooten,* 234 N.C. 107, 66 S.E. 2d 690. Acts transpiring prior to or simultaneously with the alleged negligent act of defendant cannot be relied upon by defendant to insulate his negligence, since the principle of insulating negligence refers to acts and conduct subsequently occurring. *Alford v. Washington,* 238 N.C. 694, 78 S.E. 2d 915.

There was no error in overruling the demurrers, and the motions for nonsuit were properly denied. Defendants offered evidence, so the only motions for nonsuit to be considered are those made at the close of all the evidence. And the evidence, whether offered by plaintiffs or defendants, must be taken in the light most favorable to plaintiffs. *Murray v. Wyatt,* 245 N.C. 123, 95 S.E. 2d 541.

The evidence tends to show: When Carolyn Faye Jernigan was about 200 feet from the intersection she turned on the mechanical blinking device giving a left turn signal; it made a clicking noise in the car. Plaintiff Flowers looked back and saw the lights of a car which was maintaining a high rate of speed. It was coming fast, and was beginning to "careen" to the left side of the highway. It "wasn't too far" back. Mrs. Flowers said: "Faye, you had better not turn, for if you do that car will hit you." Faye replied: "He had better not, because I have got on my signal light." Plaintiff Tart looked back and said: "There sure is one coming fast; you had better not turn, he will hit us." At this time the Jernigan car was 100 feet from the intersection and still in the west lane. Faye (according to her testimony) was aware that there was a car behind, looked in her rear-view mirror when about 100 feet from the intersection, but did not continue looking because she "had given . . . signal long enough that (she) thought the person behind . . . was supposed to have control of the car." When about 25 feet from the intersection she turned left, but did not reach the dirt. The cars collided in the east lane.

It is true that G.S. 20-154(a) does not mean that a motorist may not make a left turn on a highway unless the circumstances be absolutely free from danger. Only reasonable care must be exercised in determining that the movement may be made in safety. *Cooley v.*

*Baker,* 231 N.C. 533, 58 S.E. 2d 115. The record clearly shows that Register was negligent, and it is true that a driver on the highway is under no duty to anticipate the negligence of other users of the highway. *Simmons v. Rogers,* 247 N.C. 340, 100 S.E. 2d 849. But Miss Jernigan was aware that a car was following. Both plaintiffs warned her of the perilous circumstances; she looked in the rear-view mirror and could have observed the circumstances. Thus she was, or, in the exercise of due care, should have been forewarned of the danger of making a turn. There was time to take protective action. Yet, she ceased to continue looking in the mirror. No car was approaching from the opposite direction. From her actions and her declaration at the time, it is clear that she was relying solely upon the efficacy of the signal she had given, which she had no right to do. *Eason v. Grimsley, supra.* Under the evidence, favorable to plaintiffs, the inference is permissible that Miss Jernigan looked in her rear-view mirror 100 feet before reaching the intersection, but did not look any more, and therefore failed to keep a reasonable lookout (*Gasperson v. Rice,* 240 N.C. 660, 83 S.E. 2d 665), and that she failed to exercise reasonable care to ascertain whether or not she could turn in safety, and that such omissions proximately caused any injuries suffered by the plaintiffs. The evidence conforms to and supports the allegations of the complaint.

(2). Appellants assign as error the action of the court below (a) in admitting in evidence, over their objections, the testimony of plaintiffs, quoted above, that they warned driver Jernigan if she turned the Register car would hit hers, and (b) in restating this evidence in the charge while recapitulating the evidence, giving plaintiffs' contentions, and applying the law to the facts. This assignment of error is not sustained.

When a startling or unusual incident occurs, the exclamations of a participant concerning the incident, made spontaneously and contemporaneously and without time for reflection or fabrication, are admissible as *pars res gestae.* Stansbury: North Carolina Evidence, s. 164, pp. 346-348; *Woods v. Roadway Express, Inc.,* 223 N.C. 269, 25 S.E. 2d 856. The challenged evidence was otherwise competent because it fixed Miss Jernigan with notice of possible peril against which she was under duty to guard, and bore directly upon the issue of her negligence. Moreover, it was competent to rebut the allegations of appellants' answers which state that plaintiffs were "guilty of negligence which proximately caused and contributed to any injury which (they) may have received in the collision in that (they) rode and continued to ride in the car while it was being so operated without protest or remonstrance; that (they) failed and neglected to keep a proper lookout for (their) own safety; and that (they) failed and neglected to

warn the defendant Carolyn Faye Jernigan of the approaching danger which (they) saw or, in the exercise of reasonable care, should have seen." Thus, appellants by their pleadings laid the foundation for admission of this testimony.

(3). Defendant Register, over objection of appellants, was permitted to testify that Miss Jernigan put on a turn signal but turned it off before reaching the intersection, leading him to believe she did not intend to turn. In this we find no error.

Register, in his answer, denied that Jernigan gave any signal or warning of her intention to turn. It is true that plaintiffs do not rely on a failure to give a turn signal and actually allege that the signal was given. A careful reading of the charge will show that the judge applies this testimony only in giving the contentions of defendant Register. The charge once alludes to this evidence in giving the plaintiffs' contentions, but the court explains that "Plaintiffs contend that you should find that she (sic) was operating the signal." There was no request to limit the jury's consideration of the evidence, but the court carefully and deftly limited its application to the proper sphere of competency.

(4). At the time of the trial and entry of judgment defendant Carolyn Faye Jernigan was a minor without general or testamentary guardian. After verdict, but before judgment was entered, it was discovered that no guardian *ad litem* had been appointed to represent her in these suits. A motion had been lodged by defendants to set aside the verdicts, as contrary to the weight of the evidence, and for a new trial. "Hearing on these motions was by consent of counsel for all parties continued until the November Term . . . in Johnston County." Pending the hearing on these motions, Judge Carr appointed a guardian *ad litem* for Miss Jernigan on 25 November 1961. The guardian *ad litem* filed his reports on 29 November 1961. In the final judgments on 2 December 1961 Judge Carr found facts, based on the reports of the guardian *ad litem,* and they are paraphrased in part and quoted verbatim in part as follows:

> "The Court finds as a fact that Franklin T. Dupree, Jr. is a competent attorney and that he vigorously defended this action in the trial before the jury, and that he has done everything that would have been done in the defense of said minor if a guardian *ad litem* had been appointed and that her interest up until this time has been properly and adequately protected."
>
> The guardian *ad litem* made a thorough investigation of the pleadings and of the facts surrounding the defense of said actions, reported his findings, adopted the pleadings filed in the case on

behalf of the minor, and requested that Mr. Dupree, attorney, continue to represent the minor and the guardian *ad litem* until the action is finally terminated.

"The Court finds as a fact from the report of said guardian *ad litem* that the interests of said minor have been fully and amply protected and to the same extent as if a guardian *ad litem* had been appointed at the time said action was instituted. . . ."

The minor appellant questions the jurisdiction of the court to appoint a guardian *ad litem* for her after verdict and thereafter to enter a valid judgment against her and the guardian.

The question has not heretofore been expressly decided in this jurisdiction. In an action to vacate a deed of gift, a plaintiff, father of minor defendants, was appointed guardian *ad litem, nunc pro tunc,* for them. It was held that he was disqualified to serve because of his colorable adverse interest, and that his appointment was "fatal error which cannot be cured by any evidence of good faith or want of injustice." By way of *obiter dictum* it was stated that the minors are entitled to protection "at every stage of the proceeding; and we cannot approve of an order appointing a guardian *ad litem nunc pro tunc*." *Ellis v. Massenburg,* 126 N.C. 129, 35 S.E. 240. Infants, who were parties to an action for construction of a will, were served with summons, and their interests fully represented and their rights fully considered in Superior Court, but on appeal to Supreme Court it was discovered that no guardian *ad litem* had been appointed for them. The Supreme Court appointed such guardian pursuant to the general provisions of the Revisal, s. 1545, *nunc pro tunc,* and declared it would be vain and useless to remand the case for rehearing below. *Perry v. Perry,* 175 N.C. 141, 95 S.E. 98.

The basic principles in this area of the law, almost universally followed, are stated thus: "While the appointment of a guardian ad litem for an infant defendant is not jurisdictional in the sense that failure to make such appointment deprives the court of power to act and renders such judgment void, a judgment rendered against an infant in an action in which he was not represented by a guardian ad litem or a general guardian is erroneous, and can be overthrown by writ of error coram nobis, or by motion in the same court, or by proper appellate proceedings, at least where the want of such representative affects the substantial rights of the infant." 27. Am. Jur., Infants, s. 121, p. 842.

In the case at bar, we hold that the belated appointment of the guardian *ad litem* does not affect the court's jurisdiction. The failure to appoint at the stage of the action contemplated by the statute

(G.S. 1-65.1) was error. Infants are favorites of the courts, and the courts are duty-bound to protect their rights and interests in all actions and proceedings whether they are represented by guardians or not. *Trust Co. v. Buchan*, 256 N.C. 142, 152, 123 S.E. 2d 489. And this Court will scan with extra care all records affecting the interests of minors. Whether a new trial will be ordered for failure to appoint a guardian *ad litem* will depend upon the circumstances of the particular case as to whether the infant or infants have been fully protected in their rights and property. "A new trial will not be granted for mere technical error which could not have affected the result, but only for error which is prejudicial or harmful." 1 Strong: N. C. Index, Appeal and Error, s. 40, p. 118. In the present record it affirmatively appears, both from the facts found by the judge below and a careful examination of the record as a whole, that the interests of the minor, Carolyn Faye Jernigan, have been fully and amply protected and to the same extent as if a guardian *ad litem* had been appointed at the outset. A new trial will not be awarded for failure to appoint in apt time.

(5). The court submitted the following issue: "Was the defendant Carolyn Faye Jernigan operating the 1954 Chevrolet of Thelma Bryant Jernigan as the agent of Thelma Bryant Jernigan, that is as a member of the family of Thelma Bryant Jernigan, under the family purpose doctrine, as alleged . . .?" The jury answered in the affirmative. Appellants excepted to the submission of the issue, and contend that the evidence was insufficient to support a finding of agency under the family purpose doctrine.

The evidence as to the ownership, control and use of the Jernigan car is in substance as follows: The Chevrolet was given to Carolyn Faye Jernigan by her mother, Thelma Bryant Jernigan, and her uncle as a graduation gift. It was registered in her mother's name because Faye was a minor. Faye used it in driving to and from her work at Wellon's Candy Company, and for other purposes. She has always lived in the home of her parents and has kept the car there; she earned wages and helped with household expenses as she saw fit, but in no definite regular amount. She bought gasoline and oil for the car and paid for its upkeep. She did not ask her mother's permission to use the car, but usually told her mother where she was going if her mother was present at the time. She still "minds" her mother, but has the right to use the car without her mother's permission. Her mother has a car of her own, but "the car that's closest to the road is the one that" her mother drives "or that she (Faye) drives." Faye was not on any business for her mother at the time of the collision, but was returning from work — on the "night shift."

"Ordinarily, a cause of action based solely on the family purpose

doctrine is stated by allegations to the effect that at the time of the accident the operator was a member of his family or household and was living at home with the defendant; that the automobile involved in the accident was a family car and was owned, provided and maintained for the general use, pleasure, and convenience of the family, and was being so used by a member of the family at the time of the accident with the consent, knowledge and approval of the owner of the car." *Lynn v. Clark,* 252 N.C. 289, 113 S.E. 2d 427. Liability under the family purpose doctrine is not confined to owner or driver. It depends upon control and use. *Goode v. Barton,* 238 N.C. 492, 497, 78 S.E. 2d 398; *Matthews v. Cheatham,* 210 N.C. 592, 598, 188 S.E. 87.

*Elliott v. Killian,* 242 N.C. 471, 87 S.E. 2d 903, is factually analagous to the case at bar. The automobile was being driven at the time of the accident by the infant defendant. The car was registered in his father's name. It was insured in the name of the father — the premium had been paid three times, once by the father, twice by the son. The son lived in father's home as a member of the family. The father never refused to let his son use the car when he wanted to. The infant defendant's mother and sister had ridden with him in the car. He paid about two-thirds of the purchase price of the car, and his father signed a note for the balance and paid some on the note — also "stood for" repairs, and drove the car on occasion. Title was taken in the father's name because the son was a minor. The Court discusses applicability of G.S. 20-71.1, but concludes: "If plaintiff had not had the benefit of the above statute, it would seem that she has sufficient evidence to carry her case to the jury. *Matthews v. Cheatham, supra; Goode v. Barton,* 238 N.C. 492, 78 S.E. 2d 398." For analagous cases from other jurisdictions see: *Stevens v. Van Deusen,* 241 P. 2d 331 (N.M. 1951); *Pooliet v. Box,* 246 P. 2d 1050 (N.M. 1952); *Robinson v. Ebert,* 39 P. 2d 992 (Wash. 1935); *Hanson v. Eilers,* 2 P. 2d 719 (Wash. 1931).

The evidence is sufficient to take the instant case to the jury on the family purpose doctrine, and appellants' exception is not well taken.

(6). Hospital and doctor's bills incurred by plaintiff Flowers because of injuries received in the collision, in the amount of $395.25, were paid under automobile medical payments insurance coverage on the Jernigan car, which coverage obligated the insurer to pay these expenses irrespective of any tort liability on the part of defendants Jernigan. Over objection of appellants, plaintiff Flowers was permitted to testify that she incurred these expenses, and the jury was permitted to consider them in awarding damages. Appellants contend that it was error to permit her to recover double damages in this amount.

In recent years insurers have issued comprehensive automobile liability policies which, in addition to the liability clause for payment on

behalf of insured any tort liability within policy limits, contain a medical payment clause obligating insurer to pay directly to persons injured, irrespective of negligence, medical expenses incurred by reason of the operation of the described automobile. An additional premium is collected on account of the medical payment clause.

By the great weight of authority a person injured by reason of the operation of an automobile insured under such comprehensive policy may recover under both the liability clause and the medical payment clause, even though it amounts to a double recovery of medical expenses. *Dumas v. United States Fidelity and Guaranty Co.,* 125 S. 2d 12 (La. 1960); *Bordelon v. Great American Indemnity Co.,* 124 S. 2d 634 (La. 1960); *Warren v. Fidelity Mutual Insurance Co.,* 99 S. 2d 382 (La. 1957); *Distefano v. Delta Fire and Casualty Co.,* 98 S. 2d 310 (La. 1957); *Severson v. Milwaukee Automobile Insurance Co.,* 61 N.W. 2d 872, 42 A.L.R. 2d 976 (Wis. 1953); *Southwestern Fire and Casualty Co. v. Atkins,* 346 S.W. 2d 892 (Tex. 1961); 8 Appleman: Insurance Law and Practice, s. 4896, pp. 349-353. The holdings are the same in cases where insurer is not a party and where defendant is the named insured and payor of the premiums. *Long v. Landy,* 171 A. 2d 1 (N.J. 1961); *Gunter v. Lord,* 132 S. 2d 488 (La. 1961); *Truitt v. Gaines,* 199 F. Supp. 143 (D. Del. 1961).

In the *Distefano* case (which overruled an earlier Louisiana case, *Hawayek v. Simmons,* 91 S. 2d 49) insurer had previously paid, as in the instant case, medical expenses, and it was held that plaintiff could also recover these expenses under the liability clause. The court reasoned as follows:

> "(Insurer's) responsibility under its liability coverage depended upon its insured being shown negligent; its responsibility under its Medical Payments Coverage had nothing to do with negligence at all.
>
> "A claim based on the liability feature of the policy is a tort claim; a claim based on the medical payments feature of the policy is a claim sounding in contract.
>
> "If (insurer) had two separate policies, one granting liability coverage and one granting Medical Payments Coverage, that would be no different than the situation as it presently exists where both coverages are furnished under the same policy."

But under a policy containing a provision that the amount payable pursuant to its general liability clause should be reduced to the extent of payments made under the medical expense features of the contract, it was held that double recovery for medical expenses would not be

allowed. *Bowers v. Hardware Mutual Casualty Co.*, 119 S. 2d 561 (La. 1960.)

In the instant case the insurance policy is not a part of the record. The provisions of the policy are not before us. Indeed, it may contain a provision such as that involved in the *Bowers* case. But regardless of this, the trend of decision in this jurisdiction is contrary to the majority rule on the facts presented in the case at bar. *Jordan v. Blackwelder*, 250 N.C. 189, 108 S.E. 2d 429. Defendant paid the premium — both premiums — and thereby provided financial protection for those injured in the use of her car. Admittedly, if she had no insurance coverage, there could only be one recovery of medical expenses incurred by a guest passenger. If double recovery can be had when she is insured, it is not by reason of one claim sounding in tort and the other in contract, as suggested, but solely by reason of the provisions of the insurance contract. In our opinion it was not within the contemplation of the contracting parties that there should be a double recovery of medical expenses. It was intended that injured parties have minimal protection (medical payments) where negligence is not involved, and full protection (to the limits of the policy) and no more, where negligence is involved. It is manifestly inequitable for plaintiff to recover twice against the same defendant, even though payment was in part voluntary. Consider the hypothetical, but quite probable, case where recovery is in excess of insurance limits, or a case where medical payments are provided by insurance and financial responsibility provided from defendant's personal assets; a court in such instances could not in good conscience sustain a double recovery for medical expenses. Our single recovery ruling in this case is to be limited to factual situations materially the same as the one here presented.

Appellants are entitled to a credit of $395.25 against the recovery of plaintiff Flowers in this case, and the judgment below will be modified so as to allow this credit; as thus modified the judgment is affirmed.

In the trial of plaintiff Tart's action, no error.

Judgment in plaintiff Flowers' action, modified and affirmed.