Ollie GOWENS, Plaintiff

v.

MORGAN & SONS POULTRY CO., Inc., and Carl Ray Beeson, Defendants and Third-Party Plaintiffs,

v.

Christine M. LOVE, Third-Party Defendant.

No. C–204–G–63.

United States District Court Middle District North Carolina, Greensboro Division.

Dec. 28, 1964.

On Cross Motions to Increase Award and for Credit Feb. 18, 1965.

**400**

A. C. Muse, Danville, Va., and Major S. High, Greensboro, N. C., for plaintiff.

McLendon, Brim, Holderness & Brooks, Greensboro, N. C., for defendants.

Wharton, Ivey, Wharton & Dameron, Greensboro, N. C., for third-party defendant.

GORDON, District Judge.

This action was brought by the plaintiff, Ollie Gowens, to recover damages for personal injuries which she received when the 1955 Plymouth automobile in which she was a passenger was struck from the rear by a 1959 International truck pulling an empty Fruehauf trailer, operated by defendant, Carl Ray Beeson, and owned by defendant, Morgan & Sons Poultry Co., Inc.

Subsequently the defendants joined as third party defendant Christine M. Love, who was the driver of the 1955 Plymouth automobile in which the plaintiff Gowens was a passenger, for contribution in accordance with North Carolina General Statute, Chapter 1, § 240.

A jury trial was waived and the matter was heard by the Court. The original defendants moved for dismissal of the plaintiff's action at the close of the plaintiff's evidence and at the close of all the evidence. The third party defendant moved for dismissal of the cross action of the original defendant at the conclusion of the original defendant's evidence and at the conclusion of all the evidence. The original defendants moved for dismissal of the third party defendant's counterclaim at the close of evidence offered by third party defendant. The Court reserved its decision on these motions pending receipt of proposed findings of fact and conclusions of law and briefs from counsel for the respective parties.

Having now carefully considered all of counsels' proposals, arguments and contentions, as well as the testimony and exhibits submitted at the trial, and the reasonable inferences to be drawn therefrom, the Court, pursuant to Rule 52 of the Federal Rules of Civil Procedure,

makes its Findings of Fact and Conclusions of Law as follows:

### FINDINGS OF FACT

1. At the time of the institution of the action, the plaintiff was a citizen and resident of Virginia, and the third party defendant Love was also a citizen and resident of the State of Virginia. The defendant Beeson was a citizen of North Carolina, and the defendant Morgan & Sons Poultry Co., Inc., was a corporation incorporated under and by virtue of the laws of the State of North Carolina, with its principal offices within the State of North Carolina.

2. The plaintiff Gowens was a passenger in the right front seat of the 1955 Plymouth Sedan, owned and operated by the third party defendant Love, and was proceeding in a southerly direction enroute to Winston-Salem, North Carolina, over and along Highway No. 29, approximately ten miles south of Danville, Virginia, on March 21, 1962, when said automobile at about 1:30 A.M., was involved in a collision with a 1959 International truck, pulling a trailer, owned by defendant Morgan & Sons Poultry Co., Inc., and operated by defendant Beeson, who was operating the aforementioned truck and trailer as the agent and employee of Morgan & Sons Poultry Co., Inc., and in the course of its business and within the scope and authority of his employment.

3. Highway No. 29, at the point at which the collision occurred is a two-lane concrete-surfaced highway and the maximum posted speed was 55 miles per hour as designated by the North Carolina State Highway Commission. The collision occurred on a straight stretch and during the hours of darkness at approximately 1:30 A.M., and while rain was falling. Traffic on the highway was light and visibility was sufficient to operate an automobile at normal highway speeds.

4. Immediately prior to the collision the third party defendant Love was operating her automobile at a rate of speed of approximately 40 to 45 miles per hour and the defendant Beeson was operating the tractor-trailer unit of Morgan & Sons Poultry Co., Inc., at a rate of speed of approximately 40 to 45 miles per hour and at a distance of 100 to 125 feet directly behind the Plymouth automobile, but was not in the act of passing. Under the existing conditions and circumstances, the Court finds that this distance was improper and unsafe and that the operation in such manner constituted negligence on the part of the defendant Beeson.

5. By the third party defendant Love's failure to keep a proper lookout and proper control of her automobile, she allowed her automobile to run off the right-hand edge of Highway No. 29 onto the right-hand shoulder; and the operation in such manner constituted negligence on the part of the defendant Love. She immediately released the accelerator, but she lost control of her automobile. It veered across the highway into the left-hand lane, and into the path of an approaching tractor-tanker unit driven by Jewell Crowe. The automobile then veered back into the right-hand lane of travel. At no time during the above mentioned happenings did the third party defendant Love apply her brakes.

6. After the Plymouth automobile went onto the right-hand shoulder and veered across the highway, out of control, the defendant Beeson observed that the driver of the aforementioned approaching tractor-tanker unit apparently applied his brakes in order to avoid a head-on collision with the Plymouth automobile and that the application caused the tractor-tanker unit to jackknife. The defendant Beeson confronted with this emergency situation properly applied his air brakes in quick succession and so as to not skid the wheels of the vehicle which he was operating. This was done to keep his tractor-trailer unit in the right-hand lane of travel and not to jackknife and possibly collide with the tractor-tanker unit approaching in the left-hand lane. The defendant Beeson was also confronted with the situation of not knowing whether the Plymouth automo-

bile would remain in the left-hand lane or return to the right-hand lane.

7. The Plymouth automobile driven by the third party defendant Love returned to the right-hand lane of travel in a diagonal position across said lane. The defendant Beeson slowed his tractor-trailer unit to approximately 10 to 15 miles per hour, but he was unable to avoid hitting the rear end of the Plymouth automobile. The force of the collision caused the Plymouth automobile to turn approximately 180 degrees and stop on the right-hand shoulder of Highway No. 29 with its front end facing in a northerly direction. The tractor-trailer unit remained in its right-hand lane and stopped with its front end facing in a southerly direction. The tractor-tanker unit driven by Crowe proceeded without contact with either of the other vehicles in a northerly direction in the left-hand lane and stopped approximately 200 feet north from the point of the collision.

8. As a result of the said collision, the plaintiff Gowens sustained injuries and incurred hospital, doctor and nursing expenses, in connection with the treatment of the injuries. Injuries sustained to the person of the plaintiff by reason of the collision are as follows: Abrasions and lacerations of the left ankle, and bruises about the head, face and chest.

## DISCUSSION

The Court finds as a fact that defendant Beeson was negligent in that under the existing conditions he maintained an improper and unsafe distance behind the Plymouth automobile in which the plaintiff Gowens was riding. The Court concludes that this negligence was a proximate cause of the plaintiff Gowens' injuries. The Court also finds as a fact that the third party defendant Love was negligent in that she failed to keep her Plymouth automobile under proper control and to keep a proper lookout. The Court concludes that said negligence was a proximate and contributing cause of the plaintiff Gowens' injuries.

The Court will hereinafter consider respectively the above mentioned acts in more detail.

As to the acts of defendant Beeson, North Carolina General Statute, Chapter 20, § 152, reads in part:

"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, with regard for the safety of others and due regard to the speed of such vehicles and the traffic upon and condition of the highway."

Violation of the above section is negligence per se, and if it is the proximate cause of injuries, it is actionable. Murray v. Atlantic Coast Line R. Co., 218 N.C. 392, 11 S.E.2d 326 (1940); Crotts v. Overnite Transportation Company, 246 N.C. 420, 98 S.E.2d 502 (1957).

Beeson testified that if he had slammed on brakes when the Plymouth automobile went off the highway and swerved into the left hand lane that his tractor-trailer would probably have jackknifed as the unit had more of a tendency to slide when empty than when loaded. At the time of the collision, and in accordance with the testimony of the defendant Beeson, the trailer was empty. Beeson also testified that the concrete-surfaced highway was wet, and it was raining. Beeson's testimony further shows that immediately before the collision, he was approximately 100 to 125 feet behind the Plymouth automobile in which the plaintiff Gowens was riding. Under these conditions, the Court finds that the defendant Beeson was following the Plymouth automobile too closely. In so finding the Court makes particular note of the fact that the road was wet, and the defendant knew he could not apply fully the brakes inasmuch as he was pulling an unloaded trailer which would likely jackknife if the brakes were fully applied.

If the defendant Beeson were in the act of passing, then North Carolina General Statute Chapter 20, § 152 would have no application to these facts and provide no standard by which the Court might judge. Maddox v. Brown, 232

N.C. 542, 61 S.E.2d 613 (1950). However, the Court finds that the defendant Beeson was not in the act of passing, even though there is evidence that he was contemplating it. It is also noted that the tractor-tanker unit driven by Crowe was approaching in the left-hand lane; therefore, the defendant Beeson knew that it would not have been safe to pass the Plymouth automobile. Contemplation of passing is not the act of passing.

■ It is contended that the defendant Beeson did all an ordinary reasonable and prudent man would do in the emergency situation. An emergency situation was created when the Plymouth automobile driven by the third party defendant Love went off the right-hand side of the highway and swerved into the left-hand lane. The Court finds that in the face of this situation the defendant Beeson was reasonable and prudent when he did not slam on his brakes but only applied them in quick succession. However, it has been held that if the peril suddenly confronting a defendant is due to his failure to keep a safe distance behind another vehicle and maintain a proper lookout, the fact that care was exercised after discovery of the peril would not excuse the negligent conduct. Brunson v. Gainey, 245 N.C. 152, 95 S.E.2d 514 (1956). Therefore, the fact that the defendant Beeson was maintaining an improper and unsafe distance behind the Plymouth automobile under the existing conditions and helped create the emergency is sufficient to create liability. This is true even though the defendant Beeson was not negligent in the face of the existing emergency.

■ It was stipulated by the parties that the defendant Beeson was an employee of the defendant Morgan & Sons Poultry Co., Inc., and at the time of the accident was within the scope and authority of his employment. Therefore, under the principle of respondeat superior, the defendant Morgan & Sons Poultry Co., Inc., is also liable for the damages to the plaintiff Gowens proximately caused by negligence of the defendant Beeson. Pridgen v. Holeman Produce Co., 199 N.C. 560, 155 S.E. 247 (1930).

■ Considering the acts of the third party defendant Love, the Court finds that she did not maintain proper control of her Plymouth automobile and failed to keep a proper lookout. It is held that it is the duty of a motorist, while operating his automobile, to keep a proper lookout and to keep his car under proper control. Failure to do so constitutes negligence. Harper v. Harper, 225 N.C. 260, 34 S.E.2d 185 (1945); Clark v. Emerson, 245 N.C. 387, 95 S.E.2d 880 (1957).

■ The third defendant Love testified that she hit something in the highway, and this caused her to lose control of her automobile. However, the defendant Beeson and the driver of the tractor-tanker unit, Jewell Crowe, both testified that they saw the Plymouth automobile driven by the third defendant Love go off the right-hand side of the highway and splash mud and water. This version is further substantiated by the fact that upon investigation of the highway by Crowe, no holes or objects were found in the highway which the third party Love might have hit. Furthermore, Crowe testified that he showed the patrolman who came to investigate a hole on the right shoulder of the highway which the third party defendant Love's automobile struck. The evidence seems conclusive that the third party defendant Love allowed her Plymouth automobile to go off the right-hand side of the highway and onto the shoulder and thereby lost control of it. The Court therefore finds the above acts of the third party defendant Love constitute negligence which proximately caused and contributed to the injuries of the plaintiff Gowens. It is noted by this Court that a guest in an automobile may recover of the host for actionable negligence or want of ordinary care which proximately produce injury. White v. McCabe, 208 N.C. 301, 180 S.E. 704 (1935); Spivey v. Newman, 232 N.C. 281, 59 S.E.2d 844 (1950).

404

The plaintiff Gowens is entitled to recover as damages for her injuries one compensation in a lump sum for all injuries, past and prospective, in consequence of the defendants' wrongful and negligent acts. Hunter v. Fisher, 247 N.C. 226, 100 S.E.2d 321 (1957). After giving effect to this rule and carefully considering the nature and extent of injuries sustained by the plaintiff Gowens, and her loss of earnings and medical expenses proximately resulting from the negligence of the defendant Beeson and the third party defendant Love, it is found that she is entitled to recover of the original defendants the sum of Two Thousand Two Hundred Seventy-five Dollars ($2,275.00).

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of the controversy. 28 U.S.C.A. § 1332.

2. The original defendants' motion to dismiss the plaintiff's action should be and is denied.

3. The original defendants' motion to dismiss the counterclaim of the third party defendant is granted.

4. The plaintiff is entitled to recover from the original defendants, Morgan & Sons Poultry Co., Inc., and Carl Ray Beeson, as damages the sum of Two Thousand Two Hundred Seventy-five Dollars ($2,275.00), together with her costs herein expended.

5. The original defendants, Morgan & Sons Poultry Co., Inc., and Carl Ray Beeson, are entitled to contribution only from the third party defendant in accordance with the terms of North Carolina Statute, Chapter 1, § 240.

Counsel for plaintiff will prepare and submit to the Court an appropriate judgment.

### On Cross Motions to Increase Award and for Credit.

Upon motions of the plaintiff and the third party defendant, the Court held a hearing on January 29, 1965, concerning the award of damages to the plaintiff in the subject action. The Court, by findings of fact and conclusions of law entered December 29, 1964, found in favor of the plaintiff on the issue of negligence and awarded damages to the plaintiff in the amount of $2,275.00. The plaintiff seeks to have the Court increase the award and alleges that the amount awarded is inadequate in view of the evidence presented, and resists the motion of the third party defendant to have the sum of $434.00 credited to the award of damages. The Court denies the plaintiff's motion to increase the award, but honors the plaintiff's request to set out with more particularity the items of damage considered by the Court.

The third party defendant seeks to have the sum of $434.00 credited on the award of damages. Said sum was paid pursuant to the medical-payments provision of the third party defendant's liability insurance policy to certain of the physicians who attended the plaintiff. The Court allows the motion and credit for reasons hereinafter set forth.

### FINDINGS OF FACT

#### I.

In this action, the plaintiff sought to recover the sum of $25,000.00 as set forth in the original complaint. At the trial the plaintiff testified that as a result of the collision she received several injuries of which the more serious were multiple bruises of her body, especially on the left side, cut on the left ankle, a cut on the inside of her mouth, and loosened and broken teeth. The plaintiff also testified and contends that as a result of these injuries, she sustained loss of income because she was incapacitated to work at her vocation as a beautician; that after the accident on March 22, 1962, she was only able to work part time for the remainder of the year, and therefore, lost approximately $1,700.00 in income; that she worked only about six months in 1963 and, therefore, lost approximately $1,500.00 in income; and in 1964 worked only part time. The plaintiff contends that she was incapacitated by reason of pain in her eyes and head.

Testimony of the plaintiff revealed that medical and other expenses were incurred as a result of injuries sustained in the accident with the defendants as follows: Dr. F. A. Carmines, $105.00; Dr. James P. Shavers, $459.00; Dr. W. W. Royall, Jr., $40.00; Dr. Musgrove, $20.00; Winslow Hospital, in Danville, Virginia, $19.89; transportation expenses paid to the plaintiff's brother-in-law to take her from Danville to Newport News, Virginia, after the accident, $15.00; and transportation expenses to and from visits to physicians, $25.00. The total of these amounts is $683.89. Considering this total, it appears to the Court that the plaintiff's disagreement with the award of damages is principally concerned with the allotment for loss of past, present and prospective earnings and pain and suffering.

Introduced into the evidence were the depositions of Dr. Carmines, an orthopedic surgeon, Dr. Shavers, a dentist, and Dr. Royall, an optometrist, each having administered treatment to the plaintiff after the collision. The Court carefully considered the testimony in the depositions as well as the other evidence presented by the plaintiff in arriving at damages proximately caused by the negligence of the defendants.

From the deposition of Dr. Carmines, it appears that he saw the plaintiff three times, once on March 22, 1962; once on March 28, 1962; and the last time on April 6, 1962; that the plaintiff told him that an x-ray was taken of her ankle at the hospital in Danville, Virginia, after the accident and the x-ray reflected that there were no broken bones; that he made x-rays of the cervical and dorsal spine of the plaintiff and such disclosed no evidence of fractures; that no sutures were made as a result of the cut on the ankle; that he found that the plaintiff had suffered contusions and abrasions of the left ankle, contusions of the chest and acute cervical sprain; that he advised the plaintiff to use moist heat in treatment of the injuries; that at the time of the plaintiff's last visit to him, she had normal range of motion of the cervical spine and full range of motion of the left ankle; that he was of the opinion that the plaintiff could return to work as a beautician on April 13, 1962, and that she would make a full recovery and had not sustained any permanent residual effects; that he told the plaintiff if she had more trouble to contact him again, but that he did not hear anymore from her.

Dr. Shavers, in his deposition, stated that he first saw the plaintiff on April 13, 1962; that upon examination he found that she had no upper teeth and only seven lower teeth; that of the seven lower teeth, four had been broken and shattered, persumably as a result of the accident; that he extracted the seven teeth; that at the time of the plaintiff's first visit to his office, she delivered to him an upper complete plate which she stated had been broken in a collision; that he treated the plaintiff for periodontia, a gum disease caused by poor oral hygiene; that he last saw the plaintiff on September 10, 1962, at which time he delivered to her upper and lower plates.

Dr. Royall stated in his deposition that he first saw the plaintiff on June 21, 1962, at which time she complained of headaches; that he examined her and found no abnormalities other than a need for corrective lenses; that his examination revealed no sign of injury to either the interior or the muscle of the eye; that he prescribed new lenses for the plaintiff which he deemed would stop the headaches; that he requested the plaintiff to return to have the prescription verified, but she did not return for approximately two years; that he did not know whether the prescription for new lenses was filled or not; that he saw the plaintiff on June 4, 1964, and she again complained of headaches; that without x-rays he could not determine whether the headaches were caused by injuries sustained by the plaintiff; that his examination of the plaintiff disclosed that she had an astigmatism.

The Court deems it significant from the evidence that the plaintiff never sought treatment from a medical doctor

as regards the pain in her eyes and head.

██ ██ The Court recognizes the difficulty in proving and accurately determining damages for injuries which are subjective rather than objective. The Court has approached the task of determining the damages by meticulously reviewing and evaluating the evidence presented. The Court in the subject case sat charged with the duty of finding the facts inasmuch as a jury had been waived, and the Court in such capacity is not compelled to accept at face value the testimony presented, even though such testimony is not directly rebutted. The contentions of the plaintiff as to loss of time by reason of incapacity is not substantiated by the depositions of her physicians. The evidence is not convincing that the medical expenses incurred entirely resulted from the collision. For instance, new lenses were prescribed and a new upper plate with a complete lower plate. It is a matter of conjecture as to whether the plaintiff's requirement for new lenses and dentures entirely resulted from the collision or whether such was needed by the passage of time. The law requires that persons only be held accountable for damages proximately caused by negligent conduct and no more. The Court is of the opinion that a large portion of the afflictions complained of by the plaintiff were not proximately caused by the negligence of the defendants herein; therefore, the Court finds that the sum of $2,275.00 adequately compensates the plaintiff for her medical expenses attributable to the negligent acts of the defendants, and also for loss of past, present and prospective earnings and pain and suffering. For the reasons herein stated, the Court denies the motion of the plaintiff regarding insufficiency of damages awarded.

## II.

With reference to the motion of the third party defendant, it is contended that the amount of $434.00 should be credited against the damages as United States Fidelity and Guaranty Company,

the insurer for the third party defendant, paid to Dr. J. P. Shavers the sum of $384.00 and to Dr. F. A. Carmines, the sum of $50.00, pursuant to the medical-payments provision of the liability policy with the third party defendant. The affidavit of Arthur N. Smearman, who is an adjuster with United States Fidelity and Guaranty Company, was submitted to establish the fact of payment.

██ The Supreme Court of North Carolina has expressly held in two cases that payments made pursuant to the medical-payments provision of a liability policy could and should be credited against the damages recovered. Jordan v. Blackwelder, 250 N.C. 189, 108 S.E.2d 429 (1959); Tart v. Register, 257 N.C. 161, 125 S.E.2d 754 (1962). In the latter case, the Court stated at page 764 of 125 S.E.2d:

> "In our opinion it was not within the contemplation of the contracting parties that there should be a double recovery of medical expenses. It was intended that injured parties have minimal protection (medical payments) where negligence is not involved, and full protection (to the limits of the policy) and no more, where negligence is involved. It is manifestly inequitable for plaintiff to recover twice against the same defendant, even though payment was in part voluntary. Consider the hypothetical, but quite probable, cases where recovery is in excess of insurance limits, or a case where medical payments are provided by insurance and financial responsibility provided from defendant's personal assets; a court in such instances could not in good conscience sustain a double recovery for medical expenses."

It appears to the Court that this is the more just rule; therefore, the motion of the third party defendant is allowed.

## CONCLUSIONS OF LAW

1. The motion of the plaintiff for additional findings of fact is allowed but is denied as to increasing the award.

2. The motion of the third party defendant for additional findings of fact and conclusions of law in regard to the award of damages is allowed.

3. The payment of the total sum of $434.00 for and on behalf of the plaintiff, Ollie Gowens, by the United States Fidelity and Guaranty Company, the liability insurance carrier of the third party defendant, Christine M. Love, constitutes a credit against any recovery which the original defendants, Morgan & Sons Poultry Co., Inc. and Carl Ray Beeson, shall have by way of contribution against the third party defendant and similarly constitutes a credit against any recovery which the plaintiff shall have against the original defendants.