FARMERS OIL COMPANY, INC. v. JOSEPH HERMAN MILLER
AND
WILLIAM E. BATTEN v. JOSEPH HERMAN MILLER.

(Filed 24 March, 1965.)

1. Automobiles § 8—

Before making a left turn from a highway, a driver is required to first ascertain that the movement can be made in safety and, when the movement may affect any other vehicle, to give the statutory signal for the turn, and his failure to perform either duty is negligence *per se*, and is actionable when a proximate cause of injury.

**2. Same—**

The statutory signal required before a motorist may turn from a straight line must be given for a sufficient distance and length of time to enable the driver of a following vehicle to observe it and understand therefrom what movement is intended.

**3. Same—**

G.S. 20-154 must be given a realistic interpretation and does not preclude a left turn unless the movement is absolutely free from danger but only requires that a motorist not turn left without exercising reasonable care under the circumstances to ascertain that such movement can be made in safety.

**4. Automobiles § 41h—**

Plaintiff's evidence tending to show that defendant driver saw a tractor-tanker, driven by plaintiff, following him when it was some 300 or 400 feet behind him on a straight highway, that after driving some distance defendant attempted to turn left into a private driveway without again looking back or exercising any care to see that the movement could be made in safety, that notwithstanding plaintiff driver, in attempting to pass, blew his air horn three or more times, defendant continued to turn left, and that the collision occurred on the drivers' left side of the highway, *held* sufficient to be submitted to the jury on the issue of defendant's negligence.

**5. Automobiles § 14—**

Yellow lines are designed primarily to prevent collision between an overtaking and a passing automobile and a vehicle approaching from the opposite direction, and the crossing of a yellow line may be an evidential detail in the totality of circumstances on the question of negligence.

**6. Same—**

A party may not rely upon the violation of G.S. 20-150(e) by his adversary when he does not allege the violation of the statute or allege any fact showing such violation or, even though his adversary crossed a yellow line in his lane of travel, does not show that the highway was marked by the Highway Commission so as to indicate that passing should not be attempted. It is a matter of common knowledge that the words "Do Not Pass" are posted on portions of the State highways.

**7. Automobiles § 18—**

A private driveway is not an intersecting highway within the meaning of G.S. 20-150(c), and in order for provisions of the statute to apply there must be not only an intersection of highways but such intersection must be marked by appropriate signs by the duly constituted authorities.

**8. Automobiles § 42e— Evidence held not to show that plaintiff was guilty of contributory negligence as a matter of law in crossing yellow line to pass preceding vehicle.**

Evidence tending to show that plaintiff driver upon cresting a hill at a lawful speed saw an automobile being driven slowly ahead in its right lane of travel in the same direction, that plaintiff coasted behind the car until he ascertained that the car was not turning left into an intersecting rural

road, that thereafter he could see a quarter of a mile ahead that the highway was free of oncoming traffic, and crossed a yellow line in his lane of traffic and started to pass the car, that the driver of the car started veering to the left to turn into a private driveway, that plaintiff repeatedly blew his air horn, that the first time he blew his horn defendant was in his right traffic lane, and that defendant kept turning his automobile to the left, and that the collision occurred on the drivers' left side of the highway, *is held* not to show contributory negligence as a matter of law on the part of plaintiff.

**9. Negligence § 26—**

What is the proximate cause of an injury is ordinarily a question for the jury to determine from the attendant circumstances, and conflicting inferences of causation preclude nonsuit on the ground of contributory negligence.

APPEAL by plaintiffs from *Parker, J.*, 7 December 1964 Session of GREENE.

Two actions *ex delicto*, by consent, consolidated and tried together: one by the corporate plaintiff to recover for damages to its tractor-tanker unit, for cost of wrecker service, and for rent paid for tractor-tanker equipment, while its tractor-tanker unit was being repaired, and the other by the personal plaintiff, agent and driver of the corporate plaintiff's tractor-tanker unit, to recover damages for physical injuries. Each plaintiff in identical allegations in each complaint alleges that while William E. Batten, the agent and driver of the corporate plaintiff's tractor-tanker unit, was attempting to overtake and pass on Highway 11 an automobile owned and driven by defendant, defendant negligently turned his automobile from a direct line on the highway to his left in the path of plaintiff's tractor-tanker unit without first seeing that such movement could be made in safety, and without giving a plainly visible signal of his intention to make such a left-turn movement, negligently failed to keep a proper lookout, and negligently operated his automobile so as to endanger the person and property of others using the highway; and that such negligence on defendant's part proximately caused a collision between plaintiff's tractor-tanker unit and his automobile resulting in damage to the corporate plaintiff's property and costs incident thereto, and in physical injuries to the personal plaintiff.

Defendant, in a separate answer in each action, denies that he was negligent and avers a counterclaim to recover for damages to his automobile allegedly proximately caused by the negligence of Batten, driver of the corporate plaintiff's tractor-tanker unit, in operating the tractor-tanker unit in a careless and reckless manner in violation of G.S. 20-140, in operating it at a speed greater than was reasonable and proper

under the attendant circumstances in violation of G.S. 20-141, in failing to keep a proper lookout and to keep it under control, in driving on the left side of the highway without passing two feet to the left of his automobile traveling in the same direction, in attempting to overtake and pass his automobile without giving any signal of his intention to pass and without seeing that his movement could be made in safety, and in attempting to pass at or near an intersection. Defendant in each answer conditionally pleads Batten's contributory negligence — the same allegations of negligence as in his counterclaim in each action — as a bar to any recovery by both plaintiffs.

From a judgment of compulsory nonsuit entered at the close of plaintiffs' evidence, plaintiffs appeal. After the expiration of the December Session, defendant on 29 December 1964 appeared before the clerk of the superior court of Greene County and took judgment of voluntary nonsuit of its counterclaim against each plaintiff, such judgment being signed by the clerk.

*Lewis and Rouse by Robert D. Rouse, Jr., for plaintiff appellants.*
*Braswell & Strickland by Roland C. Braswell for defendant appellee.*

PARKER, J. Plaintiffs assign as error the judgment of compulsory nonsuit. Considering their evidence in the light most favorable to them, *Bridges v. Graham,* 246 N.C. 371, 98 S.E. 2d 492, it tends to show the following facts:

About three miles north of the town of Kenansville, Highway #11 runs in a general north-south direction, and has pavement 20 feet wide. To the south of where the collision hereinafter set forth occurred, the highway is straight for about 4/10's of a mile and is downgrade. Going north on this straight stretch of highway, there is an unpaved rural road, #1380, on the left about 18 feet wide, and on its side where it intersects Highway #11 on the left there is a stop sign. About 250 feet north of rural road #1380 and on the left of Highway #11, there is an unpaved private driveway or lane about 12 feet wide leading to a house in a field. Highway #11 about 500 feet north of rural road #1380 is straight, downgrade, and then has an "S" curve. On the shoulder of the highway there was a sign indicating a curve ahead. The speed limit where the collision occurred was 60 miles an hour for passenger automobiles and 50 miles an hour for trucks. The point of collision between plaintiff's tractor-tanker unit and defendant's automobile was at the entrance of the private driveway or lane as it enters the highway from the left going north. In the center of Highway #11 there is a broken white line. Beginning approximately 389 feet south of the point

of collision and continuing through the "S" curve, there was a solid yellow line in the right lane for traffic traveling north.

About 4:30 p.m. on 13 January 1964 Batten was operating the corporate plaintiff's tractor-tanker unit, filled with gasoline and kerosene, north on Highway #11 approximately three miles north of the town of Kenansville at a speed of 40 to 45 miles an hour. He came around a curve and a hill, and saw defendant's automobile 300 or 400 feet ahead of him traveling very slow north in the right lane of traffic where it approached the point where rural road #1380 comes into the highway from the left. The highway was downgrade about 20%, and he "coasted" along behind to see if defendant was going to turn left into rural road #1380. He has been traveling this highway five years and knew rural road #1380, but had not observed before the private driveway to its north. When defendant's automobile passed the intersection of rural road #1380, he could see about a quarter of a mile ahead, and seeing no traffic approaching and traveling about twice as fast as defendant was traveling, he turned on his left-turn signals, pulled into the left lane for traffic and started to overtake and pass defendant, who at that time was traveling far over to his right-hand side of the highway. When he got within 20 or 30 feet of defendant, defendant "veered" over toward the center line of the highway. Whereupon, he blew his air horn, which is operated by air pressure and sounds like a diesel train engine. When he first blew his air horn, defendant was still in his right traffic lane. Defendant kept turning his automobile to the left, and he blew his air horn two or three more times. He was watching defendant's automobile to see if he gave a turning signal, and saw none given. As defendant continued to turn left, he pulled the tractor-tanker toward the shoulder of the road to avoid defendant, but defendant still continued to turn left, and as defendant got on the left side of the highway the right front part of the tractor struck defendant's automobile as he was turning into the private driveway. The impact pushed the tractor-tanker unit over to the edge of a drain ditch. He was applying his brakes, and stopped by the drain ditch. Its dirt gave way, and the tanker turned over on its side. In the collision Batten sustained physical injuries.

A. S. Butler, a State highway patrolman, arrived at the scene of the collision shortly after it occurred. He saw defendant there. He testified in respect to a conversation with defendant at the scene as follows:

"I asked Miller what happened. He stated that he was going north on N. C. 11 and was attempting a turn into his driveway leading to his residence. I asked him did he at any time see the vehicle operated by Batten. He stated that the last time that he

saw the subject Batten was when he was coming over a hill. He stated that as he was attempting his turn that he failed to check his rear and the exact location he did not know. He stated that he did not look back before he made his turn. He stated he gave his signal, but did not look back and went ahead to make his turn. The hill to which I refer is about 4/10 of a mile back."

G.S. 20-154(a) provides in relevant part: "The driver of any vehicle upon a highway before \* \* \* turning from a direct line shall first see that such movement can be made in safety, \* \* \* and whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle of the intention to make such movement." This statute imposes two duties upon a motorist upon a highway intending to turn left from a direct line: (1) To "see that such movement can be made in safety," and (2) to give the required signal "whenever the operation of any other vehicle may be affected by such movement." It is negligence *per se*, if a motorist fails to observe either of these safety requirements of the statute, and such negligence is actionable, if it proximately causes injury to another. *Tart v. Register*, 257 N.C. 161, 125 S.E. 2d 754; *Mitchell v. White*, 256 N.C. 437, 124 S.E. 2d 137; *Grimm v. Watson*, 233 N.C. 65, 62 S.E. 2d 538; *Cooley v. Baker*, 231 N.C. 533, 58 S.E. 2d 115.

G.S. 20-154(b) provides in relevant part: "All hand and arm signals shall be given from the left side of the vehicle and all signals shall be maintained or given continuously for the last one hundred feet traveled prior to stopping or making a turn." This safety requirement of the statute means that a signal must be maintained for a sufficient distance and length of time to enable the driver of the following vehicle to observe it and to understand therefrom what movement is intended. *Ervin v. Mills Co.*, 233 N.C. 415, 64 S.E. 2d 431.

The manifest purpose of G.S. 20-154 is to promote safety in the operation of automobiles on the highways, and not to obstruct vehicular traffic. This safety statute must be given a reasonable and realistic interpretation to effect the legislative purpose. The Court said in *Cooley v. Baker, supra:*

"The statutory provision that 'the driver of any vehicle upon a highway before . . . turning from a direct line shall first see that such movement can be made in safety' does not mean that a motorist may not make a left turn on a highway unless the circumstances render such turning absolutely free from danger. It is simply designed to impose upon the driver of a motor vehicle, who is about to make a left turn upon a highway, the legal duty to ex-

ercise reasonable care under the circumstances in ascertaining that such movement can be made with safety to himself and others before he actually undertakes it."

, Plaintiffs' evidence would permit a jury to find that defendant saw some 300 or 400 feet or more behind him on a straight highway an approaching tractor-tanker unit, that he did not look back again, that when he approached the entrance into the highway of a 12-foot-wide unpaved driveway or lane on his left, he began, without giving any signal of his intention to turn left from the right lane he was traveling in, to turn left without exercising any care to see that such movement could be made in safety, that before he got out of his right lane of traffic Batten blew his air horn, that defendant continued to turn left, though Batten blew his air horn two or three more times, until he drove in front of the tractor-tanker and a collision occurred, and that defendant was guilty of negligence *per se* in such operation of his automobile, which proximately caused the ensuing collision and damage and injury to plaintiffs.

The crucial question for determination is whether plaintiffs' own evidence, considered in the light most favorable to them, shows contributory negligence on Batten's part, imputable to his principal, so clearly that no other conclusion can be reasonably drawn therefrom. *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307; *Ramey v. R. R.,* 262 N.C. 230, 136 S.E. 2d 638.

Defendant in his brief contends that Batten was guilty of legal contributory negligence, which is imputed to his principal, the corporate plaintiff, in that in the operation of the tractor-tanker unit he violated the provisions of G.S. 20-149(b); in that he crossed a yellow line in his line of traffic in attempting to overtake and pass defendant; in that he violated G.S. 20-150(e); and in that he attempted to pass at or near an intersection.

G.S. 20-149(b) provides: "The driver of an overtaking motor vehicle not within a business or residence district, as herein defined, shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction, *but his failure to do so shall not constitute negligence or contributory negligence per se in any civil action; although the same may be considered with the other facts in the case in determining whether the driver of the overtaking vehicle was guilty of negligence or contributory negligence.*" (Emphasis ours.)

Defendant's answer in each case does not allege as an act of negligence in the counterclaim or as an act of negligence in the plea of contributory negligence that Batten crossed a yellow line, or that Batten

violated the provisions of G.S. 20-150(e), though the answer in each case in the counterclaim and in the plea of contributory negligence alleges Batten operated the tractor-tanker unit in a careless and reckless manner in violation of G.S. 20-140.

In *Rushing v. Polk,* 258 N.C. 256, 128 S.E. 2d 675, the Court said:

> "Yellow lines are designed primarily to prevent collision between an overtaking and passing automobile and a vehicle coming from the opposite direction, and to protect occupants of other cars, pedestrians and property on the highway. *Powell v. Clark,* 255 N.C. 707, 710, 122 S.E. 2d 706; *Walker v. Bakeries Co.,* 234 N.C. 440, 443, 67 S.E. 2d 459. The presence and the crossing of a yellow line are evidential details in the totality of circumstances in the instant case."

G.S. 20-150(e) reads: "The driver of a vehicle shall not overtake and pass another on any portion of the highway which is marked by signs or markers placed by the State Highway Commission stating or clearly indicating that passing should not be attempted."

G.S. 20-150(e) cannot be relied on by defendant to contend that plaintiffs' actions should be nonsuited on the ground of legal contributory negligence for the reason that he neither avers in his plea of contributory negligence that Batten was guilty of violating its provisions nor does he aver any facts showing that he was guilty of violating its provisions, thereby proximately causing his damage, and on the further ground G.S. 20-150(e) is not applicable here because there is no evidence in the record that any portion of the highway where the collision occurred "is marked by signs or markers placed by the State Highway Commission stating or clearly indicating that passing should not be attempted." It is a fact commonly and generally known that many portions of the State highways have signs or markers bearing the words, "Do Not Pass," as required by G.S. 20-150(e). In *Hunt v. Wooten,* 238 N.C. 42, 76 S.E. 2d 326, the Court said:

> "The statute now codified as G.S. 1-139 specifies that 'in all actions to recover damages by reason of the negligence of the defendant, where contributory negligence is relied upon as a defense, it must be set up in the answer and proved on the trial.' The defendant must meet the two requirements of this statute to obtain the benefit of the affirmative defense of contributory negligence. The first requirement is that the defendant must specially plead in his answer an act or omission of the plaintiff constituting contributory negligence in law; and the second requirement is that the defendant must prove on the trial the act or omission of the

plaintiff so pleaded. Allegation without proof and proof without allegation are equally unavailing to the defendant."

G.S. 20-150(c) provides: "The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any steam or electric railway grade crossing nor at any intersection of highway unless permitted so to do by a traffic or police officer. *For the purposes of this section the word 'intersection of highway' shall be defined and limited to intersections designated and marked by the State Highway Commission by appropriate signs; and street intersections in cities and towns.*" (Emphasis ours.) There is no evidence in the record that the entrance of the unpaved driveway or lane into the highway was marked by the State Highway Commission, and therefore, this subsection of the statute does not apply here. *Pruett v. Inman,* 252 N.C. 520, 114 S.E. 2d 360. Further, this court held in *Levy v. Aluminum Co.,* 232 N.C. 158, 59 S.E. 2d 632, that a private driveway is not an intersecting highway within the meaning of G.S. 20-150(c).

Plaintiffs' evidence, considered in the light most favorable to them, shows that Batten driving a tractor-tanker unit at a speed of 40 to 45 miles an hour on a straight highway saw ahead of him defendant's automobile traveling very slow in the right lane of traffic in the same direction he was traveling, that he "coasted" along behind to see if defendant was going to turn left into rural road #1380, that when defendant's automobile passed the rural road intersection, he could see a quarter of a mile ahead, and seeing no traffic approaching him, he crossed a yellow line in his lane of traffic and started to overtake and pass defendant's automobile. That he did not blow his air horn until he got within 20 or 30 feet of defendant, when defendant veered over toward the center line of the highway, whereupon he blew his air horn. That when he first blew his air horn defendant was still in his right traffic lane. Defendant kept turning his automobile to the left, and he blew his air horn two or three more times. He was watching defendant's automobile and saw no turning signal given. That defendant got on the left side of the highway, and the collision occurred.

When motor vehicles are proceeding along a highway in the same direction, there is no rule of law that compels one to travel indefinitely behind the other or gives one the unqualified right to overtake and pass the other. 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 221.

What is the proximate cause of an injury is ordinarily a question for a jury. It is to be determined as a fact from the attendant circumstances. Conflicting inferences of causation arising from the evidence carry the case to the jury. *Pruett v. Inman, supra.*

We have found no case in our Reports with similar facts. Considering plaintiffs' evidence in the light most favorable to them, we conclude that plaintiffs have not proved themselves out of court by their own evidence on the ground of legal contributory negligence, because conflicting inferences of causation of their damage and injury arise from their evidence. In our opinion, and we so hold, plaintiffs' evidence was sufficient to withstand a motion to nonsuit, and the issues of negligence and contributory negligence should be submitted to a jury for their determination under proper instructions from the trial court. The judgment of involuntary nonsuit was improvidently entered, and is

Reversed.