ARLEE LAWSON, ADMINISTRATRIX OF THE ESTATE OF BEN LAWSON, DECEASED, v. ERNEST BRADLEY BENTON.

(Filed 2 February, 1968.)

**1. Negligence § 11—**

Where defendant relies upon contributory negligence as a defense, he is required specifically to plead in his answer the acts and omissions of plaintiff relied upon as constituting contributory negligence and to prove them at the trial. G.S. 1-139.

**2. Pleadings § 28—**

Allegation without proof and proof without allegation are equally fatal.

**3. Pleadings § 29; Automobiles § 94—**

In the absence of appropriate allegations in the answer as to the negligence of plaintiff's intestate in riding in an automobile operated by defendant while defendant was in a state of intoxication, the trial court was not required to submit that issue of intestate's contributory negligence to the jury.

**4. Automobiles § 94—**

Evidence that defendant was operating his automobile within the permissible speed limit until he attempted to overtake and pass two automobiles in front of him on a sweeping curve, that plaintiff's intestate then told him to "mash it," and that the defendant accelerated to a speed of 110 miles per hour and that the car went out of control and overturned, *held* insufficient to be submitted to the jury on the issue of intestate's contributory negligence, since the sole reasonable inference permissible from the evidence is that intestate merely urged defendant to return quickly to the proper lane for the safety of the passengers.

**5. Same—**

A passenger in an automobile is not held to a duty of remonstrating with the driver as to his reckless conduct in the overtaking and passing of another vehicle when to do so would increase the hazard of passing.

**6. Appeal and Error § 4—**

An appeal, of necessity, follows the theory of trial in the lower court, and where a cause has been tried on one theory in the court below, appellant will not be permitted to urge a different theory on appeal.

APPEAL by defendant from *Cohoon, J.,* 10 April 1967 Civil Session of LENOIR.

Civil action by plaintiff to recover damages from automobile operator and owner for wrongful death of her intestate sustained when he was a guest passenger in defendant's automobile which left the highway and overturned in a ditch on the north side of the highway. Plaintiff alleged in substance as follows: That her intestate, Ben Lawson, died on 30 August 1964 while a resident of Lenoir County; that she is the duly appointed and qualified administratrix of his estate; that she is informed and believes that defendant was the owner and operator of a 1956 Lincoln automobile on 30 August 1964 and that said automobile on that date was registered in defendant's name; that she is informed and believes that about 12:30 p.m. on 30 August 1964 her intestate was a passenger sitting on the right front seat of the said Lincoln automobile which was being operated by defendant in a westerly direction on U. S. Highway #70 about five miles east of the city limits of Kinston; that at such time and place said highway was wet and slick due to rain which had been falling that day; that defendant, while operating his automobile at a speed in excess of 60 miles per hour on said wet, slick highway, attempted to pass two automobiles which were in front of him, also proceeding in a westerly direction; that in attempting to do so defendant lost control of his automobile which left the highway, ran onto the shoulder, and overturned in a ditch on the north side of the highway; that as a direct and proximate result of said operation of the automobile her intestate, who was 39 years of age, gainfully employed, and of good health and habits, received injuries from the overturning of the automobile from which he died instantly; that defendant was negligent in the following respects: (1) driving his automobile on said highway at an excessive rate of speed under the conditions and circumstances then and there existing which rate of speed was also greatly in excess of the speed limit; (2) operating the automobile negligently when he knew or should have known that the tires on said automobile were worn, defective, and unsafe; (3) operating his automobile carelessly, recklessly, without regard for the rights and safety of others, and in a manner so as to be likely to endanger persons, particularly decedent; and (4) failing to keep said automobile under proper control.

Defendant in his answer admitted that plaintiff was the duly appointed and qualified administratrix of Ben Lawson's estate; that on the date alleged in the complaint he was the owner and operator of said Lincoln automobile; that Ben Lawson was a passenger riding in the front seat of the automobile; and that said automobile was traveling in a westerly direction on U. S. Highway #70 about five miles east of the city limits of Kinston. Defendant denied all allegations of negligence. In his further answer and defense, defend-

ant alleged, as a plea in bar, the contributory negligence of plaintiff's intestate. Defendant further alleged that if he were negligent, which is denied, then plaintiff's intestate, Ben Lawson, was guilty of contributory negligence in the following respects: (1) Plaintiff's intestate suggested to the defendant that he try the old Lincoln out and see what it would do, and that immediately prior to the accident complained of plaintiff's intestate told defendant to. step on it and see what it would do when her intestate was aware of the weather and road conditions and also of any other circumstances relating to the operation of defendant's automobile at said time and place; (2) if defendant operated said Lincoln automobile negligently as contended by plaintiff, which is denied, then it was the duty of plaintiff's intestate to remonstrate with him concerning the manner in which said automobile was being operated, but plaintiff's intestate failed to remonstrate with defendant as required and actively urged and egged the defendant on, suggesting on more than one occasion that the defendant see what the automobile would do.

Both plaintiff and defendant offered evidence.

During the course of the trial defendant through counsel stipulated that the court might answer "Yes" to the issue concerning whether defendant was negligent. The following issues were submitted to the jury and answered as indicated:

"1. Was the plaintiff's intestate, Ben Lawson, killed by the negligence of the defendant, as alleged in the complaint?

ANSWER: Yes.

"2. What amount, if any, is the plaintiff entitled to recover of the defendant?

ANSWER: $17,500.00."

From judgment entered in accord with the verdict, defendant appeals.

*Turner and Harrison by Fred W. Harrison for defendant appellant.*

*Beech & Pollock by. H. E. Beech for plaintiff appellee.*

PARKER, C.J. Defendant has one assignment of error reading as follows:

"That the Court erred in that the Court failed to declare and explain the law arising on the evidence given in this case as required by G.S. 1-180 in that the Court failed to charge the Jury as to the law arising upon the evidence given in this case

as it relates to the defense of contributory negligence in Tort Actions based upon negligence."

G.S. 1-139 specifies: "In all actions to recover damages by reason of the negligence of the defendant, where contributory negligence is relied upon as a defense, it must be set up in the answer and proved on the trial." In this jurisdiction a plea of contributory negligence is an affirmative defense, and when relied upon as a defense, it must be set up in the answer and proved on the trial. The first requirement is that the defendant must have specifically pleaded in his answer an act or omission of plaintiff constituting contributory negligence in law; and the second requirement is that the defendant must prove on the trial the act or omission of the plaintiff so pleaded. Allegation without proof and proof without allegation are equally unavailing to the defendant. *Oil Co. v. Miller,* 264 N.C. 101, 141 S.E. 2d 41; *Rodgers v. Thompson,* 256 N.C. 265, 123 S.E. 2d 785; *Maynor v. Pressley,* 256 N.C. 483, 124 S.E. 2d 162; *Murray v. Wyatt,* 245 N.C. 123, 95 S.E. 2d 541; *Hunt v. Wooten,* 238 N.C. 42, 76 S.E. 2d 326.

Plaintiff offered evidence tending to show the following facts: About 12:30 p.m. on 30 August 1964 defendant was driving his 1956 or 1957 Lincoln automobile in a westerly direction on U. S. Highway #70 about five miles east of the city limits of Kinston. William Fisher, James Fisher, Charlie Koonce, and plaintiff's intestate Ben Lawson were passengers in the automobile. There had been a heavy downpour of rain for about twenty minutes to half an hour. The tires on the back of the Lincoln automobile were slick and those on the front had some tread but were fairly worn. As he approached a long curve defendant drew up behind two cars in front of him. He was operating the Lincoln automobile at a speed of 60 to 70 miles an hour. After defendant had passed the second car in front of him which had slowed down a little to give him more room to pass, he cut rather abruptly in front of the automobile, whereupon the rear of the Lincoln automobile spun around in the direction of travel. It then left the highway on the right shoulder of the road and went into a drainage ditch, proceeded down the drainage ditch backward several hundred feet, hit a culvert in the road, and jumped into the air from six to eight feet. A door on the right side of the Lincoln automobile came open and someone fell out of the automobile. The car then continued through the air, fell on its right side, and slid for 50 or 60 feet.

A State Highway Patrolman, Bert Mercer, arrived at the scene about 1:20 p.m. The highway at the scene of the wreck was 22 feet wide and the shoulders on each side were 10 feet wide. Proceeding toward Kinston from this point, the highway curves in a long sweep-

ing manner to the right, and visibility at that point is approximately 200 to 300 feet. The patrolman measured the distances involved in the accident. The distance from the edge of the pavement to the culvert was 222 feet, and from the culvert to the rear portion of the automobile where it came to rest was 69 feet. Mercer testified in substance on cross-examination: When a wrecker turned the Lincoln automobile over, its glove compartment came open; and he noticed therein a pint bottle containing clear liquid. He smelled the contents of this bottle, and in his opinion it was nontaxpaid whiskey. About an hour and a half after the accident, he saw defendant in the emergency room at Lenoir Memorial Hospital. Defendant at that time had a very strong odor of some intoxicant about him, and in Mercer's opinion he was under the influence of an intoxicating beverage.

During the trial defendant stipulated that plaintiff's intestate died as a result of injuries received from the automobile accident herein involved.

Defendant offered evidence tending to show: On the morning of the wreck James Fisher, Durwood Fisher, Charles Koonce, plaintiff's intestate, and defendant went to Dover in defendant's Lincoln automobile. They went to a house on the other side of Dover. Defendant, plaintiff's intestate, and James Fisher went into the house, stayed approximately 25 minutes, came back out, and started back to Kinston. They did not take anything into the house, and they did not bring anything out of the house. Plaintiff's intestate suggested the trip to Dover. Defendant did not drive fast on the way to Dover. Defendant did not drive fast coming back from Dover until just before they reached this sweeping curve. As defendant was nearing the curve, plaintiff's intestate told him to "mash it," and the car increased its speed up to 110 miles an hour. Charles Koonce, a passenger in the automobile, glanced at the speedometer just before the automobile reached the curve. He got down on the floor. Charles Koonce also testified on cross-examination that he had a case then pending as a result of this collision, and in fact the jury was out right then considering his case. He further testified on redirect examination that after Ben Lawson said "mash it" he (Koonce) told the driver to stop and let him out, but the driver did not stop.

Durwood Fisher, a witness for defendant and a passenger in the automobile, testified in substance: He saw plaintiff's intestate and defendant take a drink of some alcoholic beverage. Defendant got the beverage from under the seat of the car. Defendant drank some and plaintiff's intestate drank some. Then his brother drank some. He did not see anyone drink anything else that morning. After they took this drink of liquor, he heard plaintiff's intestate say to defend-

ant "mash it," just before they got to the curve in the road. Defendant "mashed it." The car began "running" and doing 110 miles an hour. Plaintiff's intestate did not ask to be let out of the automobile. After this, they passed two cars in the curve and then the Lincoln "went to spinning around." He got down in the seat and that is all he remembers until after the car had turned over. He got hurt in the accident and his claim against the defendant has been settled.

Defendant, testifying in his own behalf, admitted that he was operating the Lincoln on the occasion complained of. He does not remember why they went to Dover except that plaintiff's intestate had some business to talk with somebody there. He did have a drink of intoxicating beverage. The intoxicating liquor was in the automobile. He had it before he got out of the city limits of Dover. He testified: "We were coming down the road and run up behind this car, I believe it was a station wagon and I started by it. I was going pretty fast. I saw that I had room to pass the second car, so I kicked it into overdrive, picked up speed a little bit; so I could go by and it was running up around 60 to 70 miles an hour."

Defendant contends in his brief that he was entitled to an issue of contributory negligence and a charge on it, because plaintiff's evidence and his own shows that a bottle of nontaxpaid whiskey was found in the automobile after the collision, and that the patrolman saw defendant about an hour and a half after the accident in the hospital, and he was under the influence of liquor, and that riding with a driver who is under the influence of liquor has been held to be contributory negligence as a matter of law. This contention is untenable, for nowhere in the answer is there any reference to the defendant's operating the automobile under the influence of liquor or while drinking. Nor is there any intimation in the answer that if in fact defendant was operating the automobile under the influence of liquor plaintiff's intestate knew of it. There is no statement or reference in the complaint that defendant at the time had a drink or was operating his automobile while under the influence of liquor. In the absence of appropriate allegations on the subject of intoxicating liquor, the presiding judge was neither required nor permitted to leave to the jury the question as to whether the defendant proximately caused his automobile to overturn by reason of operating it under the influence of intoxicating liquor.

There is no evidence to support the allegations in the plea of contributory negligence that on the return trip to Kinston plaintiff's intestate suggested to the defendant that "he try the old Lincoln out and see what it would do." There is evidence in the record that

when defendant started to overtake and pass two automobiles on the long sweeping curve, plaintiff's intestate told him to "mash it." There is no evidence in the record that plaintiff's intestate "actively urged and egged the defendant on and suggested on more than one occasion that the defendant see what his car would do," except the one instance of plaintiff's intestate telling defendant to "mash it" as he started to overtake and pass the two automobiles in front of him. There is no allegation in the answer that the tires on the Lincoln automobile were slick, worn out, or defective in any way, or that if they were plaintiff's intestate knew their condition. There is no allegation in the answer that defendant was an inexperienced or unskilled or a careless and reckless driver. There is no allegation in the answer that defendant was incapacitated physically to drive an automobile safely or that defendant was sleepy.

This is said in 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 524:

> "A person riding in a motor vehicle driven by another, even though not chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising reasonable or ordinary care to avoid injury — that is, such care as an ordinarily prudent person would exercise under like circumstances. The failure to do so constitutes contributory negligence which will bar recovery against a third person or the owner or operator of the vehicle, except under certain guest statutes, for injuries sustained in an accident, if such contributory negligence was a proximate cause of the accident or had a causal connection therewith.

> \*        \*        \*

> "While the standard of duty of a guest is to exercise reasonable or ordinary care for his own safety, the precautions required to be taken by a guest are less than those required of the driver. The duty of driving and the correlative duty of exercising due care for the safety of a guest rests primarily upon the driver. A guest should not undertake to supervise or direct the driver, except where such action is reasonably necessary for the guest's own safety. He is entitled to assume that the driver will exercise proper care and caution, until it becomes apparent to him that he can no longer rely upon the driver to protect him."

When motor vehicles are proceeding along a highway in the same direction, there is no rule of law that compels one to travel indefinitely behind the other or gives one the unqualified right to overtake

and pass the other, but rather, the traveler in the rear position may, at a proper place, pass another vehicle when he may do so in safety. *Oil Co. v. Miller, supra;* 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 221.

G.S. 20-150(a) provides:

> "The driver of a vehicle shall not drive to the left side of the center of a highway, in overtaking and passing another vehicle, proceeding in the same direction, unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety."

Section (b) of the same statute provides:

> "The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same direction upon the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of five hundred feet."

Sections (c), (d), and (e) of this same statute have no application to the evidence in this case. The manifest purpose of this statute is to promote safety in the operation of automobiles on the highways and not to obstruct vehicular traffic. This safety statute must be given a reasonable and realistic interpretation to effect the legislative purpose. There is no allegation in defendant's answer that when defendant turned out to pass the two automobiles in front of him that there was any oncoming traffic and that he was not free of oncoming traffic for a sufficient distance ahead to permit his automobile to overtake and pass the two preceding automobiles in safety, nor is there any allegation in defendant's answer that defendant attempted to pass these two preceding automobiles on a curve and that the defendant's view along the highway was obstructed within a distance of five hundred feet.

When the defendant turned to his left to overtake and pass the two preceding automobiles, plaintiff's intestate told him to "mash it." Defendant started to pass on a long sweeping curve. It seems reasonable to infer that the defendant's utterance to "mash it" was an expression for the defendant to accelerate his speed and pass the automobiles on the curve and get in the right lane of traffic for his own safety and for the safety of his passengers. There is evidence that defendant when he proceeded to pass got up to a speed of 110 miles an hour. It is apparent that defendant suddenly increased his speed to 110 miles an hour. In *Samuels v. Bowers,* 232 N.C. 149, 59 S.E. 2d 787, the Court said:

"The principle is generally recognized that when a gratuitous passenger becomes aware that the automobile in which he is riding is being persistently driven at an excessive and dangerous speed, the duty devolves upon him in the exercise of due care for his own safety to caution the driver, and, if his warning is disregarded and speed unaltered, to request that the automobile be stopped and he be permitted to leave the car. [Citing authority.] He may not acquiesce in a continued course of negligent conduct on the part of the driver and then claim damages from him for injury proximately resulting therefrom. But this duty is not absolute and is dependent on circumstances."

In the following cases where there was evidence of excessive speed, the question of whether a guest passenger was guilty of contributory negligence was held properly submitted to the jury for determination: *King v. Pope*, 202 N.C. 554, 163 S.E. 447; *Taylor v. Caudle*, 210 N.C. 60, 185 S.E. 446. In the following cases of a guest passenger where there was evidence of excessive speed, no issue of contributory negligence was submitted to the jury, and this Court found no error in the trial: *Norfleet v. Hall*, 204 N.C. 573, 169 S.E. 143; *York v. York*, 212 N.C. 695, 194 S.E. 486.

The undisputed evidence is that defendant was driving his automobile safely and within the permissible speed limit until he turned to the left to overtake and pass the two automobiles in front of him on a sweeping curve. Considering the totality of the evidence, we believe that it was not and should not have become apparent to plaintiff's intestate that defendant, in passing these two cars on this long sweeping curve, was operating his automobile in such a negligent and reckless fashion that the exercise of reasonable care required plaintiff's intestate to remonstrate with defendant concerning the latter's recklessness and attempt to persuade him to drive carefully. Indeed, for plaintiff's intestate to have so remonstrated with defendant at this time or to have requested him to stop so that plaintiff's intestate could get out of the car would have added to the usual hazard incident to the overtaking and passing of one car by another. In other words, we see no evidence of contributory negligence of plaintiff's intestate in this case to require the court to charge on it. We are fortified in our opinion because defendant and his able and experienced counsel did not (1) except to the two issues submitted to the jury; (2) did not tender an issue of contributory negligence; (3) did not ask for any special instructions upon contributory negligence; and (4) did not except to any part of the charge.

"An appeal, of necessity, follows the theory of trial in the lower court. . . . Where a cause has been tried on one theory in the lower court, appellant will not be permitted to urge a different theory on appeal." 1 Strong, N. C. Index 2d, Appeal and Error, § 4. What is said in *Mills v. Dunk*, 263 N.C. 742, 140 S.E. 2d 358, is relevant here: "A litigant, however, may not acquiesce in the trial of his case in the Superior Court upon one theory and here complain that it should have been tried upon another."

It is manifest that defendant is dissatisfied with the amount of damages awarded by the jury, and having tried his case on one theory in the lower court is attempting to try it on another theory in the Supreme Court. This he cannot do.

The judgment of the lower court is

Affirmed.