IN THE MATTER OF: PAUL S. GORSKI, ET AL. v. NORTH CAROLINA SYMPHONY SOCIETY, INC. AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA

No. 594A83

(Filed 30 April 1984)

**1. Administrative Law § 8; Master and Servant § 111— review of administrative decision by superior court—scope of review**

　　Civil cases are distinguishable from administrative proceedings in that there are no pleadings required in administrative proceedings, and the function of the superior court upon review is to insure that the Commission, in an

unemployment compensation case, properly construed and applied the ap-
plicable law in reaching its decision, as well as determining whether the
evidence supported the findings of fact and deciding whether the facts found
supported the conclusions of law and the Commission's decision. G.S. 96-15(f).
Therefore, in a case involving unemployment compensation claims of sixty-two
professional musicians who were members of the N.C. Symphony Orchestra in
1981, the superior court properly considered the issue of "group temporary
layoff" where the issue was before the deputy commissioner, but he failed to
recognize it, and where by their appeal to the superior court, claimants direct-
ly raised the issue.

2. **Master and Servant § 108.2— unemployment compensation for symphony musicians—group temporary layoff conclusion supported by evidence**

   In an action involving the unemployment compensation claim of profes-
sional musicians who were members of N.C. Symphony Orchestra in 1981, the
superior court judge properly concluded that claimants were on a "group tem-
porary layoff" pursuant to various regulations promulgated by the Commission
pursuant to G.S. 96-4(a) for a five-week period and were entitled to compensa-
tion for that period.

APPEAL by claimants pursuant to N.C.G.S. 7A-30(2) from the
decision of the Court of Appeals (*Judges Phillips* and *Arnold* con-
curring, *Judge Becton* dissenting) reported in 64 N.C. App. 649,
308 S.E. 2d 460 (1983), which vacated the order entered by
*Farmer, J.,* at the 27 January 1982 Civil Session of Superior
Court, WAKE County, and remanded the cause to the Employ-
ment Security Commission for reinstatement of its order of 17
July 1981 denying benefits to the claimants. Heard in the Su-
preme Court 12 March 1984.

This case involves unemployment compensation claims of
sixty-two professional musicians who were members of the North
Carolina Symphony Orchestra in 1981. The claimants' employment
with the Symphony was controlled by a contract between the
Society and Local 500 of the American Federation of Musicians.
The contract extended through the 1981-82 season, with provision
for a forty-week season in 1980-81 to conclude 1 June 1981. Each
musician also had a yearly binder contract with the Symphony.

On 12 April 1981, the Symphony notified each musician that
the master contract and scheduled season were to be cancelled ef-
fective 26 April 1981 because the Symphony did not have the
necessary funds to continue operations.

All the musicians properly filed claims for benefits with the Employment Security Commission, registered for work, and reported as required. Contrary to established procedure pursuant to N.C.G.S. 96-15, the acting Chief Deputy Commissioner removed the claims from the claims adjudicator and transferred them to a deputy commissioner for hearing and decision. The notices of hearing stated that the hearing would be on two issues: the claimants' separation from employment, N.C.G.S. 96-14(1), (2), and claimants' availability for work while unemployed, N.C.G.S. 96-13(a)(3).

At the hearing, the Symphony produced evidence that it intended to reinstate all the musicians; that it did not intend to cancel the master contract indefinitely; that concerts were scheduled for the 1981-82 season, tickets were being sold, and fund-raising efforts were being pursued; that all of the musicians were "tenured" under the contract and would continue to receive benefits under the contract, including disability, life and medical insurance, insurance for their musical instruments, retirement benefits, and workers' compensation insurance coverage. Most of the claimants played benefit concerts during the period, with the proceeds going to the Symphony for disbursement to the musicians.

The musicians produced evidence of their efforts to obtain employment. Three of the musicians were employed by other orchestras and asked for and received leaves of absence from the Symphony. Many also sought positions as teachers as well as with other musical organizations, and several accepted part-time nonprofessional work while searching for permanent employment.

The deputy commissioner made the following conclusions, inter alia:

> Based on the foregoing facts, it must be concluded that the claimants herein were, in effect, laid off their jobs for the final five weeks of the 1980-81 Symphony Season due to a lack of work available resulting from insufficient funding.
>
> . . . .
>
> Based on the foregoing facts and legal authorities, it is concluded that the claimants herein have not met their burden of showing by the greater weight of the evidence that

they have been available for permanent fulltime employment while filing claims for unemployment benefits.

First of all, they have not been genuinely attached to the labor force and available for permanent fulltime employment because of their continuing job attachment with the employer herein, The North Carolina Symphony.

. . . .

Most of the claimants have executed their individual binders for the 1981-82 Symphony Season and, apparently, the claimants have not attempted to cancel their binders. The employer has not attempted to cancel the individual binders either and has, in fact, indicated its intention of honoring the binders.

. . . .

Secondly, it is concluded that the claimants are not genuinely attached to the labor force and are, therefore, not available for permanent fulltime suitable employment because there is a virtually nonexistent market in the area of their residence and an extremely limited market nationwide for the claimants' job skills and experience. The claimants are not situated so that they have much of a chance to find work that is appropriate for them to perform. This is not necessarily due to any faults or deficiencies insofar as the individual claimants are concerned.

On these findings, the Commission denied claimants' applications for benefits.

Upon appeal to the superior court, that court entered an order making findings in pertinent part as follows:

1. The Employment Security Commission of North Carolina adopted the Regulations of the Employment Security Commission of North Carolina (January 1, 1981) pursuant to its authority under N.C.G.S. Sec. 96-4; and

2. Appellants herein were involved in a group temporary layoff as defined in Regulations 1.15 and 1.24 of the aforementioned Regulations; and

3. The filing of the appellants' claims herein constituted a constructive registration for work for at least the first four consecutive weeks of total unemployment under Regulation 10.16 of the aforementioned Regulations; and

4. Appellants were eligible for unemployment benefits during the first four weeks of total unemployment (minus any waiting period required under N.C.G.S. Sec. 96-13(c) ); and

5. The Employment Security Commission failed to make a determination under the aforementioned Regulation 10.16 as to whether actual registration for work was required of appellants as of the first day of the fifth consecutive week of total unemployment; . . .

Upon these findings, the court ordered that claimants be paid benefits for the first four weeks of their unemployment, less any waiting period required by statute, and remanded the proceeding to the Commission for determination of whether it was necessary for claimants to register for work on the fifth week of their unemployment pursuant to Employment Security Commission Regulation 10.16.

From this order, the Symphony and the Commission appealed to the Court of Appeals. That court reversed the superior court's decision.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Michael G. Okun, for claimant appellants.*

*Poyner, Geraghty, Hartsfield & Townsend, by Cecil W. Harrison, Jr., for appellee North Carolina Symphony Society, Inc.*

*Deputy Chief Counsel V. Henry Gransee, Jr. and Staff Attorney Donald R. Teeter for appellee Employment Security Commission of North Carolina.*

MARTIN, Justice.

We hold that the trial judge properly found claimants were entitled to unemployment benefits, and we therefore reverse the decision of the Court of Appeals.

[1]   The appellees argue that in reviewing unemployment benefit claims the superior court acts as an appellate court and cannot consider a basis for relief not presented in the administrative

process. For this reason, they contend the superior court could not base its decision upon the theory of a "group temporary layoff" because that issue was not presented to the Commission. In adopting this argument, the Court of Appeals relied upon *Grissom v. Dept. of Revenue,* 34 N.C. App. 381, 238 S.E. 2d 311 (1977), *disc. rev. denied,* 294 N.C. 183 (1978). *Grissom* involved a petition for review in the superior court of the dismissal of claimant as an employee of the Department of Revenue. Upon appeal to the Court of Appeals, Grissom contended that his petition was actually a complaint and could be construed to contain a claim that he was fired because of his exercise of free speech. The Court of Appeals held that because this issue was not before the superior court, he could not do so upon appeal, relying upon *Lawson v. Benton,* 272 N.C. 627, 158 S.E. 2d  805 (1968). *Lawson* was not an administrative review case but involved an automobile collision. The defendant sought to argue in the Supreme Court that an issue of contributory negligence should have been submitted to the jury. This Court pointed out that defendant had not pleaded contributory negligence and did not tender an issue on it to the court, did not except to the issues submitted nor request an instruction on that theory, and held that defendant could not raise that issue on appeal.

Civil cases such as *Lawson* are distinguishable from the proceeding here at bar. Parties, unless allowed to amend, must prove their case according to their allegations. *Oil Co. v. Miller and Batten v. Miller,* 264 N.C. 101, 141 S.E. 2d 41 (1965). In this administrative proceeding there are no pleadings required. The function of the superior court upon review is to ensure that the Commission properly construed and applied the applicable law in reaching its decision, as well as determining whether the evidence supports the findings of fact and deciding whether the facts found support the conclusions of law and the Commission's decision. *Intercraft Industries Corp. v. Morrison,* 305 N.C. 373, 289 S.E. 2d 357 (1982). In contrast to the requirements of normal civil litigation, the statute governing unemployment proceedings reads in part: "[T]he conduct of hearings and appeals shall be in accordance with regulations prescribed by the Commission for determining the rights of the parties, whether or not such regulations conform to common-law or statutory rules of evidence and other technical rules of procedure." N.C. Gen. Stat. § 96-15(f)(Cum.

Supp. 1983). Contrary to *Grissom, supra,* there was abundant evidence before the deputy commissioner to require a determination of whether the "group temporary layoff" regulations should be applied in this proceeding. The issue was before the deputy commissioner, but he failed to recognize it and thereby erred.

We note that in this proceeding claimants did not receive a hearing before the claims adjudicator prior to the hearing before the deputy commissioner. Although this procedure was lawful, it may have prevented all of the theories for relief from being fully developed during the administrative hearing. Nevertheless, Symphony by its evidence, summarized above, demonstrated that claimants had not been discharged from employment but, rather, were still employees of Symphony during the five-week period and thereafter pending the commencement of the 1981-82 season. Symphony only intended to reduce the 1980-81 season by five weeks because of the lack of operating funds. In so doing, they effectively placed the claimants in the status of a "group temporary layoff."

By their appeal to the superior court, claimants directly raised the issue of whether they were a part of the labor force, considering their continuing job attachment with the Symphony. The resolution of this issue affects the determination of whether the court properly applied the "group temporary layoff" regulations to this case. We hold that the issue of "group temporary layoff" was properly considered by the superior court.

[2] We now turn to the issue of whether the superior court correctly held that the claimants were entitled to benefits under the "group temporary layoff" regulations. Pursuant to N.C.G.S. 96-4(a), the Commission has promulgated the following pertinent regulations:

1.24 — "Temporary Layoff" is a period of unemployment occurring when one or more workers, because of lack of work during a payroll week as established by the employer, are partially or totally unemployed but are retained on the payroll and are considered by the employer to be continuing employees.

1.15 — "Group Temporary Layoff" is a temporary layoff involving *twenty (20) or more workers.*

9.10 — Whenever a group of twenty (20) or more workers is either partially or totally separated or temporarily laid off from employment at the same time, the employer shall notify the local Employment Security Office prior to the date of separation or layoff. . . .

10.16 — Unless the employer is allowed by the Commission to file claims on machine readable media, any worker who is involved in a group temporary layoff of one or more payroll weeks shall report to the local Employment Security Office or a designated point of service on a date and time specified by the Commission in a notice posted on the business premises of the worker's employer. The worker shall file an initial or continued claim for benefits on a form provided or approved by the Commission. The filing of a claim shall constitute a constructive registration for work. If a temporary layoff of total unemployment exceeds four consecutive payroll weeks, the individual shall be considered to have been separated from employment and an actual registration must be taken as of the first day of the fifth consecutive week. . . .

The Commission found as facts that: (1) The claimants are all tenured musicians with the Symphony. (2) The Symphony cancelled the master contract, reducing the 1980-81 season by five weeks, because of lack of operating funds. (3) The claimants were not paid for the last five weeks of the season. (4) The Symphony and claimants intended that claimants would be employed by Symphony for the 1981-82 season. (5) Symphony assured all of the musicians that the required funding would be available for the 1981-82 season as previously scheduled under the 1980-83 master contract. (6) Claimants have continued to receive full benefits under the master contract (except salary) during the five-week period, including sick leave, disability program, long term disability program, maternity leave, health insurance, life insurance, retirement plan, instrument insurance, and workers' compensation. (7) A substantial majority of the claimants have participated in concerts during the five-week period and the proceeds from these concerts have been paid to the Symphony for distribution to the participating musicians. (8) Eight claimants have been employed by Symphony for two to five seasons, forty claimants for five to ten seasons, and ten for more than ten seasons. (9) In

the past, claimants have continued to be employed by the Symphony even when the master contracts had expired and prior to the execution of new contracts. It was stipulated that all of the claimants had signed binder contracts with the Symphony for the 1981-82 season.

Based on these findings, the Commission properly concluded that claimants had been laid off their jobs for the final five weeks of the 1980-81 season due to lack of work available as a result of insufficient funding.

The above findings and conclusion support the superior court's conclusion that claimants were in a "group temporary layoff" during the five-week period. The Commission's conclusion that claimants were not a part of the labor force because of their continued job attachment to the Symphony buttresses this holding. This is true even though the Symphony failed to notify the Employment Security Office as required by regulation 9.10. An employer cannot defeat the rights of employees to benefits under the statute by failing to comply with the statute or the rules and regulations duly promulgated by the Commission. If the facts support the application of the regulations, they will be applied regardless of the intent of the employer.

The purpose of the "group temporary layoff" regulation is to allow an employee to receive unemployment benefits for a period of no more than four weeks without proving that he is available for work in the sense of permanent full-time employment elsewhere. This is based upon the theory that the employee is still employed and therefore is not a part of the labor force. The employee is automatically entitled to benefits for up to four weeks (less any waiting period mandated by the statute) provided he files his claim in accordance with the regulations, which is conceded in this proceeding. N.C. Empl. Sec. Comm. Reg. 10.16 (1981).

Symphony also argues that the Commission regulations concerning "group temporary layoff" are unconstitutional. The record discloses that this issue was not raised before the superior court. It was first raised in the Court of Appeals; however, that court did not pass upon it. Constitutional issues may not be raised for the first time in the appellate division. *Wilcox v. Highway Comm.*, 279 N.C. 185, 181 S.E. 2d 435 (1971). This is in accord with the

decisions of the United States Supreme Court. *Edelman v. California,* 344 U.S. 357, 97 L.Ed. 387 (1953).

We hold that the superior court judge did not err in concluding that claimants were on a "group temporary layoff" pursuant to the above regulations for the five-week period in question.

The decision of the Court of Appeals is reversed, and this cause is remanded to that court for reinstatement of the judgment of the superior court and for further remand to the superior court for compliance with its judgment.

Reversed and remanded.