The Full Commission has reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Bost and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Decision and Order and enters the following Decision and Order.
* * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the finding made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. On September 13, 1993, at approximately 12:30 p.m., the Plaintiff, Kenneth Hitesman, drove his 1993 Cab-Over International tractor-trailer on U.S. Highway I-40 into mountainous North Carolina in the left hand lane of travel and into Tunnel 1. The day was bright and sunny. Signs along the road prior to the Tunnel warned motorists that a tunnel was ahead, to remove any sunglasses and to turn on their headlights. Another sign said "Tunnel lights out." Construction workers were present along the highway near the tunnel entrance.
2. Plaintiff moved into the left lane of the two lane highway in order to avoid the construction workers. There was one car in the right lane approximately 25 feet in front of him and another car in the right lane approximately parallel with him just before entering the tunnel. As he entered the tunnel he went from bright sunshine to total darkness with the exception of taillights from the other vehicles. Entering the tunnel plaintiff heard "a lot of people slamming on brakes."
3. Approximately 100 feet into the tunnel, the automobile approximately 25 feet ahead and to the right of plaintiff slammed on brakes and the automobile traveling to Plaintiff's right side, suddenly veered in front of his vehicle. The driver making the lane change did not give a signal of any kind to indicate that he was changing lanes.
4. In order to avoid colliding with that veering vehicle, the Plaintiff, who was unable to quickly slow down or stop, turned his vehicle to the left in such manner as to collide with the left interior wall of the tunnel. As the result of the collision Plaintiff received personal injuries.
5. Overhead lights in Tunnel 1 were ordinarily used to light the tunnel and to assist drivers in negotiating the tunnel. Tunnel 1 was not lighted to its full capacity on the day of the accident because some of the lights had burned out long before their projected useful life.
6. Lights in the tunnel were under maintenance control of the Defendant's electrical section in Raleigh of which Gene Atkinson is the Supervisor. There were 140 lamp fixtures containing 280 day bulbs and 120 night bulbs which operated on 480 volts of electricity.
7. Lights in the tunnel are projected to last for three years but were changed every two years. The lights had been changed about one year before and were not scheduled for change for another year.
8. In 1980, emergency generators were installed at each of the several tunnels. Prior to that time, if the electricity in this remote stretch of highway went out for any reason, the tunnels would be without lights until the electricity returned. Customarily, the generators are checked each week to see that each is in ready for emergency service. In connection with that inspection, the tunnels lights are also inspected.
9. The electrical section also relies upon reports from the Highway Patrol and the Motorists Assistance Patrol to determine the condition of the lights in the tunnels.
10. In the western part of the state, Jim Daniels, the Defendant's employee who is alleged to have been negligent, worked for the electrical section. When he was available to the area, he was assigned to do weekly check on the generators and tunnel lights. When he inspected the generators and lighting circuit on 9 July 1993 there were 28 lights out, not enough to raise concerns.
11. During the following month, Mr. Daniels was assigned by his superior to be in other areas doing other work. His daily work assignment was supported by exhibits. He was not available to check the generators and lights in the tunnels. His next check was August 13, 1993 at which time it was found that over half of the lights of Tunnel 1 were out. He reported this outage immediately to Gene Atkinson in Raleigh.
12. When the lights are to be replaced in a tunnel, ordinarily all lights are replaced at once. In order to replace lights, approximately 20 workers are needed including all four of the qualified electricians assigned to the electrical section, some of whom are assigned to the Wilmington, North Carolina area. Special equipment must be brought in from other parts of the state. When the lights are changed, it is necessary to close the tunnel to all traffic for upwards of twelve hours as the hundreds of lights are changed and electrical repairs are undertaken.
13. There is a single lane emergency road around the side of the mountain onto which traffic can be diverted when the tunnel is closed for work on the lights. In order to open the emergency road, permanent barriers must be removed, signs erected and the road cleaned. At the time of Plaintiffs' accident, a number of employees of the Defendant were present near the tunnel entrance in the process of preparing the emergency road for use the next day when the tunnel was to be closed and the lights reinstalled.
14. Upon receiving the August 13, 1993 report from Jim Daniels that a large number of lights were out on the tunnel, Gene Atkinson ordered replacement bulbs and arranged for installation on September 14, 1993 (the day after Plaintiff's accident). His memorandum of August 16, 1993, in part, states: "This tunnel was relamped in July of 1992, but accelerated failure of the lamps in the past two weeks will necessitate relamping. I propose to relamp the week of September 13, 1993. We will travel on the 13th, and relamp on Tuesday the 14th." He also determined that the reason why so many lights had gone out in the tunnel was due to a manufacturing defect in the light bulbs. The fact that the bulbs had gone out earlier than usual was not common. At the time of the Plaintiff's accident, the Defendant's employees were proceeding for installation of the new bulbs the next day.
15. As a result of the accident, the Plaintiff received medical treatment on the following day for multiple contusions. Previously he had undergone psychiatric treatment with four courses of in-patient treatment and had four or five suicide attempts. As a result of a prior learning disability, he is functionally illiterate. Attributable to the current accident, he developed leg pain, headache, and post traumatic stress disorder. He missed time from his employment as a truck driver, losing wages in excess of $17,000 and changed jobs, since he is too nervous about driving to continue to be a professional driver. He incurred various medical expenses exceeding $2,300.00.
16. On the day of plaintiff's accident, the defendant was under a duty to maintain highway I-40 so as to protect users of the highway from unreasonable risk of harm.
17. Failure of half the lights in the tunnel presented an extremely hazardous condition that required immediate correction. Upon notice of this condition, defendant could have closed the tunnel and directed traffic to the alternative route and could have replaced the burned out lights sooner.
18. It was reasonably foreseeable that with the conditions present on 13 September 1993, particularly the dimly lighted tunnel, an accident such as the one in which plaintiff was involved would occur.
19. Defendant cannot avoid liability by blaming the accident on some unnamed driver who violated G.S. § 20-154, which requires a driver making a lane change to give a mechanical or hand turn signal. Under the sudden and emergency circumstances of this case, the sudden emergency having been a direct and proximate result of defendant's negligence, it was next to impossible for the unnamed driver to follow the dictates of this statute. His or her reflexive action in slamming on brakes and drifting into the adjacent lane without a prior mechanical or hand signal was a direct and natural consequence of defendant's negligence.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The Defendant, North Carolina Department of Transportation, is under a duty to maintain highway I-40 so as to protect users of the highway from unreasonable risk of harm. Taylor v. Town of Hertford.,253 N.C. 541, 117 S.E.2d 469 (1960); Phillips v. North CarolinaDepartment of Transportation., 80 N.C. App. 135, 341 S.E.2d 339
(1986).
2. The Plaintiff, having alleged that Jim Daniels was the employee of the Defendant who was negligent in creating or failing to correct a hazardous condition in the highway, must offer proof that he either created or failed to correct a hazardous condition. He has done this. Bolkir v. N.C. State University., 321 N.C. 706
(1988); Asyscue v. Highway Commission. 270 N.C. 100 (1967). Failure of half of the lights in the tunnel presented an extremely hazardous condition that required immediate correction.
3. Gene Atkinson, as supervisor of the Electrical Section of the Defendant, and Jim Daniels were negligent in failing to either close the tunnel and open the alternate route immediately or in replacing the bulbs sooner upon learning that half of the bulbs in the tunnel were not working. Id.
4. Plaintiff was not contributorily negligent nor was defendant insulated by any intervening negligence on the part of another. Id. The slamming on of brakes and moving into an adjacent lane under the facts and circumstances of this case did not constitute intervening insulating negligence. Id. The slamming on of brakes and moving into an adjacent lane by motorists faced by a sudden loss of light when entering a tunnel darkened by the absence of more than half the tunnel lights is foreseeable by the owner of the tunnel but not necessarily foreseeable by an unwary motorist confronted by a sudden emergency. It was reasonably foreseeable by the defendant that persons entering the dimly lighted tunnel from bright sunshine would react by slamming on their brakes and that such action would likely result in either a collision with other vehicles or a collision with part of the tunnel itself from attempting to avoid vehicles slamming on their brakes.
5. In order for the Department of Transportation to be liable for a defect on the highway, it, acting through its employees, must have notice of the defect and a reasonable time to correct it. Here, the defendant had both notice of the defect and a reasonable time to correct it or take alternative action to protect the public. Waters v. Roanoke Rapids., 270 N.C. 43
(1967).
6. While statutory provisions, namely N.C.G.S. § 20-154, require that a driver making a lane change must give a mechanical or hand turn signal which was not given by the unknown driver in this case who turned his vehicle in front of the Plaintiff's vehicle, there are emergency situations, such as demonstrated in this case, that make compliance with the statute an impossibility.Farmers Oil Co. v. Miller, 264 N.C. 101 (1965).
7. There was negligence on the part of a named officer, involuntary servant, or agent of the State while acting within the scope of his office, employment, service, agency or authority which proximately caused Plaintiff an injury, and Plaintiff is entitled to damages. N.C.G.S. § 143-291 et seq.
8. As the result of defendant's negligence, plaintiff Kenneth J. Hitesman has sustained permanent physical injuries, lost wages and diminished future earnings capacity, as well as enduring continuing pain and suffering for which he is entitled to an amount equal to $65,000, to be paid by defendant, as compensation for the damages he sustained.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of Deputy Commissioner Bost and enters the following:
ORDER
1. Defendant shall pay $65,000.00 to Plaintiff for damages sustained as a result of defendant's negligence.
2. Defendant shall pay the costs.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ DIANNE C. SELLERS COMMISSIONER
S/ _____________________ COY M. VANCE COMMISSIONER